683 So.2d 310 (1996)
Michael BERRY and Elizabeth Berry, Individually, and on behalf of their minor child, Amber Nicole Berry, Plaintiffs-Appellants,
v.
INSURANCE COMPANY OF NORTH AMERICA, et al. and Hinton Well Servicing, Inc., d/b/a Hinton Well Services, Defendants-Appellees.
No. 28580-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
Rehearing Denied December 5, 1996.
*311 Norman R. Gordon & Associates by W. Orie Hunter, III, Shreveport, for Plaintiffs-Appellants.
Brittain & Sylvester by Russell L. Sylvester, Natchitoches, Young, Richard & Meyers by George J. Richaud, New Orleans, for Defendants-Appellees.
Before MARVIN, NORRIS HIGHTOWER, GASKINS and CARAWAY, JJ.
CARAWAY, Judge.
In this case, we are asked by an injured employee to extend the ruling in Weber v. State, 93-0062 (La. 4/11/94), 635 So.2d 188, to allow this action in tort against the employer and the worker's compensation insurer for their intentional refusal to authorize a medical procedure which would have prevented a significant worsening of his employment-related injury. Since we find that the Worker's Compensation Act exclusively provides for the plaintiff's remedies, we refuse to extend the Weber ruling to this case and affirm the trial court's grant of the exception of no cause of action dismissing the suit.

Procedural background
According to the petition, the plaintiff, Michael Berry, sustained an injury while working for Hinton Well Servicing on June 10, 1992, which resulted in his suffering reflex sympathetic dystrophy ("RSD"). Hinton and its insurer, INA, began paying all weekly and medical worker's compensation benefits. On July 22, 1993, Berry's doctors requested the defendants' approval and payment for "a trial spinal cord stimulator and a trial spinal cord infusion pump to treat Michael's [RSD]." Berry alleged that these were
reasonable and necessary treatments, which would have prevented the spread of Michael Berry's [RSD], would have prevented the [RSD] from becoming intractable, would have prevented Michael Berry from suffering needless pain and suffering, and would have allowed Michael Berry to regain use of his right leg.
The defendants thereafter repeatedly refused to pay for this trial procedure. On April 22, 1994 the doctors requested approval and payment for a permanent spinal cord stimulator and infusion pump which, according to the petition, were needed immediately, would have prevented the spread of the RSD, would have prevented the RSD from becoming intractable, would have averted needless pain and suffering, and would have allowed Berry to regain the use of his right leg. This request was also denied. The petition further alleges that the defendants refused to authorize this necessary medical procedure despite knowledge that timely treatment is critical and that denial of such treatment would cause Berry's RSD to become intractable (unmanageable or hard to cure), to worsen, spread, cause excruciating pain and suffering, and deprive him of the use of his leg.
Berry filed this petition for his own damages (physical pain and suffering, loss of earning capacity, loss of enjoyment of life, medical expenses, lost wages, emotional distress, living expenses, interest and costs) and his daughter's loss of consortium; his wife *312 also sued for loss of consortium, wages and fringe benefits.
The defendants filed exceptions of no cause of action, urging that under the compensation Act, Berry's sole remedy for the failure to pay medical benefits is statutory penalties and attorney fees. La. R.S. 23:1201 and 1201.2; Bergeron v. North American Underwriters, Inc., 549 So.2d 315 (La.1989).
The Berrys opposed the exception citing the Weber decision and arguing that on the facts alleged, the defendants' intentional and arbitrary refusal to pay was not subject to the exclusive remedies of the Act. La. R.S. 23:1032 B. Following the district court's dismissal of their case as a no cause of action, the Berrys (hereinafter referred to collectively as plaintiff) have appealed.

Applicable law
The purpose of the exception of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the papers, and, for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. La. C.C.P. art. 927; Roberts v. Sewerage and Water Board of New Orleans, 92-2048 (La. 3/21/94), 634 So.2d 341. The general rule is that an exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based, i.e., unless the plaintiff has no cause of action under any evidence admissible under the pleadings. Id.; Haskins v. Clary, 346 So.2d 193 (La.1977). Every reasonable interpretation must be accorded the allegations in favor of maintaining the sufficiency of the petition and affording the litigant the opportunity to present his evidence. Jarrell v. Carter, 577 So.2d 120 (La.App. 1st Cir.1991), writ denied 582 So.2d 1311.
The compensation Act is remedial in nature and must be construed in favor of the injured employee. Pinkins v. Cardinal Wholesale Supply Inc., 619 So.2d 52 (La. 1993); Roberts v. Sewerage and Water Board of New Orleans, supra. The rights and remedies granted by the compensation Act are generally exclusive of tort remedies. La. R.S. 23:1032 A(1)(a). However, the exclusive nature of the compensation remedy is inapplicable to intentional acts. R.S. 23:1032 B; Gagnard v. Baldridge, 612 So.2d 732 (La. 1993).
At the time of the defendants' alleged actions withholding medical benefits, La. R.S. 1201E provided for penalties of twelve percent of the amount due or fifty dollars per day (up to a $2,000 maximum) for each day of delinquency, whichever was greater, for the untimely payment of medical benefits. Act No. 1003 of 1992, effective January 1, 1993. The penalty for untimely payment was inapplicable only if the necessity for the medical benefits was "reasonably controverted" by the employer or its insurer. In addition to this penalty for untimely payment, La. R.S. 23:1201.2 provides the employee with the remedy of reasonable attorney's fees when the employer's failure to pay benefits is found to be arbitrary, capricious or without probable cause.

Discussion
Plaintiff asserts a cause of action outside the exclusive framework of the worker's compensation system for the intentional failure to provide medical treatment. In Weber v. State, supra, the Supreme Court reviewed a similar denial of medical benefits and the application of the penalty and attorney's fees provisions of the Act in a situation where the employee had died shortly after his treating physician had advised the employer of the necessity for heart transplant surgery to possibly save the employee's life. The court made its ruling recognizing the plaintiff's tort claim based upon an analysis of the legislative intent for the scope of the penalty provisions of the Act and found that those penalties were never intended to "encompass the situation where the employer knew to a substantial certainty that a refusal [of medical treatment] would cause death." Id., p. 193. Though the duty to provide medical benefits was a duty imposed by the Act, the absence of an adequate worker's compensation penalty or remedy to redress the unusual circumstances which allegedly led to the employee's death caused the court *313 to recognize the existence of the general tort remedy as a permissible cause of action.
The court in Weber noted that the medical benefits claim upon which the penalties and attorney's fees could be imposed arguably had become moot following the employee's death. Likewise, since the death had occurred beyond two years following the onset of the employee's occupational disease, the death benefits under the Act which the Weber dependents could claim might have prescribed despite the fact that the defendants' alleged wrongful conduct had occurred immediately prior to the death. The court concluded that since the otherwise exclusive remedies of the Act did not fit with the circumstances of Weber's death, there was no statutory intent to exclude the plaintiff's claim in tort against the employer for wrongful death.[1]
In this case, we must likewise determine the legislative intent regarding the scope of the remedies of the Act for the defendants' refusal to provide the plaintiff with the requested medical procedure. The 1988 amendments to the Act which were not applicable in Weber provided additional power to the director of the Office of Worker's Compensation Administration (OWC) to require the use of appropriate administrative procedures "for determining the necessity, advisability, and cost of proposed ... hospital care or services, medical or surgical treatment ... and to resolve disputes over the necessity, advisability, and cost of same." La. R.S. 23:1291(B)(10). Upon application of the employee, the director shall order an examination of the employee by a doctor selected and appointed by the director whose report to the director shall be prima facie evidence in subsequent proceedings before the OWC. La. R.S. 23:1123.
Regarding the twelve percent or fifty dollars per day penalty of Section 1201, Act 1003 of 1992 amended that section to provide expressly that "medical benefits" are included within the protection afforded by the imposition of such penalty. Unlike Section 1201.2 which provides for the payment of the employee's attorney's fees for the employer's arbitrary or capricious failure to pay benefits, the untimely payment penalty of Section 1201 makes no distinction regarding the measure of the defendant's scienter, whether whimsical or deliberate, arbitrary or intentional, with the only defense against the penalty being a reasonably held belief by the defendant controverting the necessity or propriety of the proposed medical procedure.[2]
Subsequent to the time of the incident in Weber, constitutional and legislative changes instituted the system of administrative hearing officers for the OWC, divesting the district courts of jurisdiction over claims and disputes arising out of the Worker's Compensation Act. La. Const. art. V, §§ 10(A) and (B) and 16(A); La. R.S. 23:1310.1 and 1310.3(E); Long v. Insurance Company of North America, 595 So.2d 636 (La.1992). The power to adjudicate claims for medical benefits and to assess penalties lies in the OWC and the hearing officer whose procedure is governed, in the absence of special rules, by the Louisiana Code of Civil Procedure. Judgments rendered by hearing officers are appealable directly to the state *314 courts of appeal. La. R.S. 23:1310.5. Similarly, the appellate court's supervisory powers may be invoked in emergency as well as other circumstances. La. C.C.P. 2201.
Upon the initial breach of the defendants' alleged duty to provide the medical procedure requested in July, 1993, the procedural structure of the OWC adequately allowed for immediate judicial recourse which, to the extent that the plaintiff's injuries were becoming "intractable" as alleged in this suit, might have provided expedited relief to avoid irreparable injury.[3] From this quasi-judicial and administrative structure designed by the legislature, we see no intent to allow the adjudication of the breach of the employer's duty to administer medical benefits in two separate forums depending upon the narrow distinction that can exist between grossly negligent or capricious acts of non-payment and intentional acts of nonpayment.[4]
From these provisions contained within the Worker's Compensation Act and particularly Section 1201, we find sufficient evidence of a legislative intent to provide remedies under the Act for the administrative mishandling of a claim for medical benefits whether caused by the defendant's negligent or intentional disregard of the employee's rights. An arbitrary or negligent mistake by an employer in failing to pay medical benefits may cause mental anguish, unnecessary pain and a worsening of the employee's injury to the same extent that the defendants' alleged intentional conduct caused the plaintiff's damages in this case. Nevertheless, unlike the death of the employee in Weber which made the remedies of the Act meaningless, the legislature has balanced the exchange of rights between the employer and the employee in this instance and provided the remedy of the Section 1201 penalties and reasonable attorney's fees which sufficiently protect the employee regardless of the defendant's state of mind in breaching his duty. The jurisdiction of the OWC, with its procedural powers and administrative expertise for the review of proposed medical procedures, reflects the legislative intent for a single forum in which even injuries to an employee's health which are worsening due to the need for special and immediate medical procedures can and should be quickly remedied.
For the foregoing reasons, the judgment of the trial court dismissing the plaintiff's action is AFFIRMED without prejudice to plaintiff's right to proceed before the Office of Worker's Compensation Administration for the exclusive remedies discussed above.
AFFIRMED.
NORRIS, J., dissents with written reasons.
MARVIN, C.J., dissents for reasons assigned by NORRIS, J.
NORRIS, Judge, dissents.
I respectfully dissent. I do not dispute the majority's observation that the 1989 amendments to La. Const. Art. V, §§ 10(A), 10(B), and 16(A) conferred greater authority upon Worker's Compensation Hearing Officers than had been present when the facts of Weber v. State, 93-0062 (La. 4/11/94), 635 So.2d 188, arose. I also do not dispute the majority's hypothesis that upon a showing of irreparable harm, the court of appeal could exert supervisory power over the WCHO to expedite the proceedings or correct an "arguably incorrect" ruling.
I differ with the majority, however, because in my view the amendments do not alter the thrust of the Supreme Court's discussion in Weber, supra, and I feel the majority has overlooked certain critical aspects of that discussion.
In Weber, a worker sustained an occupational disease, and his doctors told him his only hope of survival was to have a heart transplant. The employer refused to authorize *315 the transplant, but the OWC recommended payment. Before the worker could seek judicial review, he died. The survivors filed a wrongful death (tort) suit; the employer filed an exception of no cause of action, which the District Court and the Court of Appeal sustained. The Supreme Court reversed, holding that the employer's "alleged conduct in intentionally and arbitrarily denying necessary medical expenses," if proved, "may result in liability for damages beyond the remedies provided in the Workers' Compensation Act [.]" The court held that such damages were appropriate when the conduct and the resulting injury did not occur in the course of employment and only marginally arose out of employment, "and when the employer knew to a substantial certainty the denial would cause death that would not otherwise have occurred."
Apparently because the case was one in which death had intervened, the court specifically reserved the decision on whether the exception would apply if the employer denied payment of necessary medical expenses despite knowledge "that a significant worsening of the employee's condition is substantially certain to follow." Id., at p. 10, 635 So.2d at 194 fn.9.
The issue reserved in that footnote is squarely presented in the instant case. Other circumstances noted by the Weber court are also valid here: potential delay in payment will likely result in the loss of use of Berry's legs, not in mere harassment or inconvenience; and the defendants' action is a separate and second incident, causing a separate injury to Berry.
Applying the rationale of Weber, I would hold that Berry stated a cause of action when alleged (1) he suffered what is not disputed to be a compensable injury; (2) intentional and arbitrary refusal to pay reasonable and necessary medical expenses results in a significant, immediate deterioration of his health, (3) this result would not have occurred otherwise and could not have been averted by recourse to the Act, and (4) the employer or insurer knew that such results were substantially certain to follow from the refusal to pay.
Further, the Supreme Court has held in Weber and in Roberts v. Sewerage & Water Bd., 92-2048 (La.3/21/94), 634 So.2d 341, that the immunity of a special act must be strictly construed against granting the immunity. Because the Supreme Court "opened the door" for damages beyond the remedies set forth in the Act, and the full extent of the exception is not clearly delineated, I cannot say that Berry has no cause of action under any evidence admissible under the pleadings. Holding the claim of employer immunity to strict construction, as mandated by Weber, I would absolve any doubt in favor of giving Berry his day in court, reverse the District Court's judgment and remand the case for further proceedings.
I therefore respectfully dissent.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, HIGHTOWER, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] As noted by the concurrence of Justice Kimball in Weber, the majority refused to apply the "intentional act" exception of La. R.S. 23:1032B, discussed supra, since the defendant's alleged intentional act concerned the breach of a duty imposed by the Worker's Compensation Act for which Section 1201 arguably imposed exclusive penalties. Under Section 1201, a defendant who intentionally decides not to pay medical benefits which are ultimately determined to be due may nevertheless escape the penalty of that section if his intentional act is based upon medical opinions reasonably controverting the need for the medical procedure. The "intentional act" exception of La. R.S. 23:1032B would not then allow the successful plaintiff to sue the employer again for any additional pain and suffering sustained during the employer's intended delay in making payment.
[2] Section 1201 further indicates its intended scope when it uses the word "fault" in stating that either the insurer or employer must pay the penalty depending upon which party is at fault in causing the delay in payment. Recently in Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712, the Supreme Court reviewed the broad civilian concept of fault stating:

"[F]ault under civilian theory clearly includes more than just negligence; it extends the gamut from strict liability to intentional torts."
Id., p. 718. (Emphasis supplied.)
[3] Without deciding the availability or propriety of mandatory injunctive relief or other procedure with the OWC, we recognize that the threatened loss of the use of plaintiff's legs would appear to be an irreparable injury which should allow for some form of expedited procedural relief at the OWC and on appeal.
[4] Although the defendants were granted relief on their peremptory exception of no cause of action, the declinatory exception of the lack of subject matter jurisdiction more correctly applies for the dismissal of plaintiff's suit, without prejudice to the plaintiff's rights for medical benefits and penalties before the OWC.