729 So.2d 1033 (1999)
Linda S. KELLY
v.
CNA INSURANCE COMPANY, et al.
No. 98-C-0454.
Supreme Court of Louisiana.
March 12, 1999.
*1034 Jan P. Christianson, Hudson, Potts, & Bernstein, Monroe, Counsel for Applicant.
Travis M. Holley, Bastrop, Counsel for Respondent.
Dickie W. Patterson, Trevor V. Davis, Baton Rouge, Counsel for Louisiana Workers' Compensation Corporation, amicus curiae.
Hunter W. Lundy, Thomas P. LeBlanc, Lake Charles, Counsel for Louisiana Trial Lawyers, amicus curiae.
JOHNSON, Justice.[*]
We granted this writ application to determine whether this injured worker has a cause of action in tort against her employer based on the facts alleged in this case, or whether the worker is limited to the remedies provided by the Louisiana Workers' Compensation Act, La.Rev.Stat.Ann. 23:1201 et seq.
In Weber v. State, 93-C-0062 (La.4/11/94), 635 So.2d 188, we held that an employer's conduct in intentionally and arbitrarily denying necessary medical expenses, if proved, may result in liability for damages in tort when the employer knew to a substantial certainty that the denial of medical benefits could cause death. We reserved for another day a decision on whether the employer is liable for damages in tort, where the employer's intentional and arbitrary refusal to pay reasonable and necessary medical expenses resulted in a significant deterioration of health, but not death.
We hold that, based on the facts of this case, this worker is limited to the remedies provided by the Louisiana Worker's Compensation Act, La.Rev.Stat.Ann. 23:1201 et seq.

FACTS AND PROCEDURAL HISTORY
Linda Kelly was employed by Shield Pack, Inc. (hereafter "Shield Pack") as a products finisher. Shield Pack and its insurer, CNA Insurance Company (hereafter "CNA") were named as defendants. In her petition for damages, plaintiff alleges that she was a "good and faithful employee" for twenty-three years, but after numerous years of repetitive use of her upper extremities, she developed carpal tunnel syndrome and was later diagnosed with bilateral epicondylitis. On March 1, 1995, plaintiff alleges that she began to experience pain in her arm and neck after she placed a liner on a machine at work.
Initially, defendants paid plaintiff workers' compensation benefits and medical benefits; however, defendants terminated the benefits on September 13, 1995. Defendants allege that the termination was based upon a medical report which indicated that plaintiff could return to work in a modified job position. On or around September 12, 1995, plaintiff returned to work at the modified position, but after a few days, she left without returning. She alleges that the modified position required occasional repetitive work, and she was unable to perform because of pain.[2]
Plaintiff filed a Disputed Claim for Compensation with the Office of Workers' Compensation.[3] *1035 In her claim, she alleged that she was entitled to disability benefits and medical benefits as well as penalties and attorney's fees in connection with the termination of her benefits and failure to pay medical expenses. A hearing was held on July 17, 1996 before Brenda R. Irving, a hearing officer with the Office of Workers' Compensation (hereafter "OWC"). The hearing officer issued a judgment awarding penalties and attorney's fees for defendants' failure to reinstate plaintiffs benefits, for defendants' failure to investigate plaintiffs continuing allegations of ongoing disability, and for being arbitrary and capricious for their failure to make the necessary arrangements for the plaintiff to be re-examined by another orthopedist. She assessed the defendants $2,000.00 in penalties and $7,000.00 in attorney's fees and ordered them to pay for and/or reimburse plaintiff for all medical expenses incurred by her as a result of her injury.
On May 29, 1996, Linda Kelly filed a tort action[4] in district court against her employer, Shield Pack and CNA, alleging that the defendants improperly terminated her workers' compensation and medical benefits, and failed to pay medical expenses incurred for the treatment of her pain which worsened her condition and caused depression and resulted in an attempted suicide. In response to the petition for damages, the defendants filed a peremptory exception of no cause of action, arguing that plaintiffs exclusive remedy was limited to benefits under the Louisiana Workers' Compensation Act. On August 21, 1996, the trial court sustained the exception of no cause of action and issued an order dismissing plaintiffs demands with prejudice.
Plaintiff appealed to the Second Circuit Court of Appeal. After an en banc hearing, the appellate court affirmed the trial court's decision in part and remanded the matter to the trial court. The majority held that an injured employee may state a Weber cause of action where death has not occurred, but the allegations asserted within this petition did not state a cause of action. The case was remanded to allow the plaintiff fifteen days to amend her petition to state a cause of action. See Kelly v. CNA Ins. Co., 29,455 (La.App. 2 Cir. 1/23/98), 706 So.2d 198. The defendants filed an application for certiorari with this court, and by an order dated April 3, 1998, we granted the application, 98-C-0454 (La.4/3/98), 717 So.2d 225.

PLAINTIFF'S MEDICAL HISTORY
Ms. Kelly alleges that she was injured on March 1, 1995, when she placed a liner on a machine at Shield Pack. Her initial complaints were pain in her arm and neck. On March 6, 1995, she was examined by Dr. Warren Daniel, who noted evidence of previous carpel tunnel surgeries. He also noted degenerative changes in her neck.
Subsequently, plaintiff was examined by several physicians who noted prior carpel tunnel surgeries. In April, 1995, Dr. Russ Greer recommended that plaintiff be excused until she was medically cleared. In August, 1995, Dr. Warren Long recommended a rotation of plaintiffs job duties to avoid continuous operation of the finisher machine. In October, 1995, Dr. Greer issued a report stating that plaintiff should not return to her previous work activities, but she should seek employment which would not require repetitious and stressful use of her upper extremities and/or twisting, flexing movements of her neck. In November, 1995, Dr. John Ledbetter referred plaintiff to a physical therapist. By March, 1996, Dr. Ledbetter opined that plaintiff was unable to work "a regular job." During this time, plaintiff expressed the desire to see Dr. Baer Rambach, an orthopedist who had treated her in the past. Plaintiff alleges that Dr. Rambach refused to see her because defendants had failed to pay medical expenses she had previously incurred.
On January 29, 1996, defendants sent Ms. Kelly to have a functional capacity examination (hereafter "FCE") under the direction of Dr. Horne. Because Ms. Kelly exerted submaximal effort during the test, the results of *1036 the FCE were inadequate. Dr. Home was unable to give plaintiff a disability rating; however, he did find that she was unable to return to a repetitive job.[5]

DISCUSSION
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Louisiana Paddlewheels v. Louisiana Gaming Com'n, 94-CA-2015 (La.11/30/94), 646 So.2d 885. The exception is tried on the face of the pleadings and the court accepts the facts alleged in the petition as true, determining whether the law affords relief to the plaintiff if those facts are proved at trial. Barrie v. V.P. Exterminators, Inc., 93-C-0679 (La.10/18/93), 625 So.2d 1007. In reviewing a trial court's ruling sustaining an exception of no cause of action, the court of appeal and this court should subject the case to de novo review because the exception raises a question of law, and the lower court's decision is based only on the sufficiency of the petition. Mott v. River Parish Maintenance, 82-C-2347 (La.5/23/83), 432 So.2d 827.
The Workers' Compensation Act provides that an employer is liable for compensation benefits and necessary medical expenses to an employee who contracts an occupational disease. La.Rev.Stat.Ann. 23:1031.1. The Act specifically includes carpal tunnel syndrome as an occupational disease, Id. La.Rev.Stat.Ann. 23:1032 provides that, except for intentional acts, workers' compensation is the exclusive remedy for work-related injuries and illnesses. The Act also contains a provision for penalties for those employers who fail to make payments. La.Rev.Stat.Ann. 23:1201. Any employer who arbitrarily, capriciously, or without probable cause, discontinues payment of claims is liable for penalties and reasonable attorney's fees. La.Rev.Stat.Ann. 1201.2.
In Weber, this court created a "narrow exception" to the exclusivity of the Act to include situations where an employee dies prior to seeking a judicial determination that his employer was arbitrary and capricious in failing to pay medical expenses. Weber involved an employee who contracted an occupational disease in early 1984. His employer, the State of Louisiana, immediately began payment of workers' compensation benefits. Four years later, Weber's condition worsened, and his treating physician advised the State that Weber's condition was terminal unless he received a heart transplant. When the State refused to incur the expense of a heart transplant, Weber was forced to seek relief with the OWC. The OWC hearing officer concluded that Weber's condition required a heart transplant and recommended that the State pay all related medical expenses. Again, the State refused to incur the costs associated with a heart transplant. Weber died before his attorney had the opportunity to seek judicial recourse.
Weber's widow and children filed a wrongful death action because of the employer's refusal to pay all related medical expenses for the heart transplant. The State filed an exception of no cause of action, arguing that the exclusive remedy for an employment related injury is covered by the Workers' Compensation Act. The State's exception was granted and affirmed by the appellate court. We granted certiorari to review the decisions from the lower courts and determined that there were two causes of action. First, we concluded that there was a work related incident which gave rise to the occupational disease contracted during employment. Secondly, the decedent had suffered an additional injury over and above the occupational disease which did not occur during the course and scope of employment. This subsequent injury arose indirectly from his employment and appeared not to be covered by the worker's compensation act because it did not occur during the course and scope of employment, "and only marginally arose out of employment". See Weber, 635 So.2d at 192.
In carving out this "narrow exception" to the general rule that grants employers immunity *1037 from tort actions, we found the actions on the part of Mr. Weber's employer reprehensible and injurious for refusing to pay all related medical expenses where death was a substantial certainty. We further concluded that "the legislature did not intend that the exclusive remedy of penalties and attorney's fees for an employer's intentional and arbitrary refusal to provide medical treatment to a compensation victim would encompass the situation where the employer knew to a substantial certainty that the refusal would cause death that would not have otherwise occurred," Weber, at 193. The exception only applies when it has been demonstrated that the employer committed intentional and arbitrary acts despite knowing that death is substantially certain to follow. However, "we reserved for another day" a decision as to whether this exception applies to a situation where a significant worsening of the employee's condition is substantially certain to follow an employer's arbitrary denial of necessary medical expenses. See Weber, fn.9.
Following Weber, the Second Circuit visited the issue of whether the Weber exception extended to non-death cases. In Berry v. Insurance Co. of North America, 28,580 (La. App. 2 Cir. 10/30/96), 683 So.2d 310, writ denied 97-0091 (La.3/7/97), 689 So.2d 1374, the court was asked to extend Weber and allow the plaintiff to recover damages where an employer refused to authorize a medical procedure which would have prevented a significant worsening of his employment related injury.[6] In Berry, the plaintiff suffered from reflex sympathetic dystrophy. In order to correct this condition, his treating physician requested that his employer approve and pay for a trial spinal cord stimulator and a trial spinal cord infusion pump to prevent the spread of this disease. The doctor further requested a permanent spinal cord stimulator and infusion pump. The employer refused both requests. Mr. Berry alleged that because of the employer's refusal, his condition worsened, spread, caused excruciating pain and suffering, and deprived him of the use of his right leg.
In refusing to extend Weber, the Court found sufficient evidence that the legislature intended to provide remedies under the Workers' Compensation Act for the administrative mishandling of a claim seeking medical benefits. The court also found that there is no distinction between an the intentional or the negligent disregard of a worker's right when an employer fails to pay medical benefits and causes a worsening of the employee's injury, unnecessary pain, and mental anguish to the employee. Moreover, the legislature balanced the exchange of rights between the employer and the employee, proving the remedy of penalties and attorney's fees as provided under La.Rev.Stat.Ann. 23:1201(E) and 23:1201.2.
Nearly three months following Berry, a different panel of the Second Circuit[7] decided Stevens v. Wal-Mart Stores, Inc., 29,124 (La.App. 2 Cir. 1/24/97), 688 So.2d 668, writ denied 97-0671 (La.5/9/97), 693 So.2d 768. Once again, the Court was faced with the issue of whether or not to apply Weber to an employee who sustained a work-related injury, and allegedly in need of further medical treatment that was intentionally and arbitrarily denied. Mr. Stevens injured his left shoulder while in the course and scope of his employment with Wal-Mart. Wal-Mart denied his workers' compensation claim. A workers' compensation hearing officer ordered Wal-Mart to pay Stevens temporary total disability payments and medical expenses, and Wal-Mart filed a suspensive appeal from that decision. During the course of the appeal, Stevens' treating physician wrote two letters in which he emphasized the seriousness of Stevens' condition and advised Wal-Mart that further delays in treatment could result in further deterioration of his physical and mental status. Despite the doctor's *1038 urgent pleas, Wal-Mart continued to withhold medical payments pending the outcome of the suspensive appeal. In his petition for damages, Stevens alleged that Wal-Mart's refusal to provide medical payments caused irreversible deterioration to his health. Plaintiff further alleged that, based on the conclusions reached by his treating physician, if the proper treatment was not immediately performed, plaintiff could lose all potential benefits of treatment.
The Court chose not to follow Berry and referred to the two dissenting views. In deciding that the Workers' Compensation Act did not provide an adequate remedy for plaintiffs injuries, the Court concluded that the rationale employed in Weber and found that plaintiff had stated a cause of action. The finding was based on a potential loss of chance for a less painful life that was not redressable under workers' compensation. The limited scope of the Act regarding its remedial provisions suggested that the legislature did not intend the remedial provisions as the exclusive remedy for what could relegate an injured employee to a life of limited functioning and greater pain.
The Third Circuit has also visited the issue of whether to extend Weber to a non-death case. In Stotts v. City of Lafayette, 97-1251 (La.App. 3 Cir., 3/6/98), 708 So.2d 820, the plaintiff filed suit against his employer, Lafayette City-Parish Consolidated Government (hereinafter "City of Lafayette"), for injuries allegedly sustained as a result of exposure to paint particles, fumes, and other chemical toxins in the paint. Plaintiff alleged that, despite an agreement to pay future medical expenses, defendant refused to approve recommended medical treatment and refused to pay medical expenses associated with treatment for his injury. Plaintiff contended that the City of Lafayette intentionally denied medical benefits despite defendant's knowledge of the serious nature of his condition and with knowledge that it was substantially certain that his condition would worsen without treatment. The court refused to extend Weber, concluding that Weber is limited to its facts. The court further refused "to upset the balance struck by the legislative compromise governing the rights of employees and employers in employment-related accidents," Stotts 708 So.2d at 822.
In Payne v. Tonti Realty Corporation, 98-76 (La.App. 5 Cir., 6/30/98), 714 So.2d 1271, the plaintiff was injured when he was struck by a golf cart driven by a co-employee. He filed for workers' compensation benefits, which were paid. He later filed a tort suit against his employer, allegedly in accord with Weber, contending that his employer failed to provide prompt treatment for his injuries. The Fifth Circuit held that the exclusive remedy provision of the Workers' Compensation Act precluded a cause of action in tort.
In 1988, when the Weber case was submitted to the Office of Workers' Compensation, orders issued by a hearing officer were only recommendations and were not binding. Mr. Weber's death occurred before he could seek intervention by a district court.
Subsequent to Weber, the Louisiana Constitution and the Workers' Compensation Act were amended, indicating legislative intent to provide immediate recourse for injured workers from an employer's arbitrary refusal to pay for medical benefits. The changes divested the district courts of jurisdiction over claims arising out of the Workers' Compensation Act and increased the power of the OWC to resolve disputes and issue orders regarding the necessity of medical treatment. The OWC and its hearing officers now have the power to adjudicate claims for medical benefits and to assess penalties and attorney's fees when employers refuse to comply with its orders. See La. Const. art. V, § 16(A); La.Rev.Stat.Ann. 23:1310.3(E). Judgments rendered by the hearing officer are binding and may be appealed directly to the state courts of appeal. La. Const. art. V, § 10(A). Had these changes been in effect during the Weber litigation, the hearing officer's recommendation would have been binding, and the State would have been ordered to pay the cost of the transplant.
Comparing the facts of Weber to those of the case sub judice, we find that the Workers' Compensation Act provides the exclusive remedy to plaintiff for the injuries she incurred. Carpal tunnel syndrome, by its very nature, is not life threatening. The employer's *1039 arbitrary denial or delay of medical treatment would not result in death or a significant worsening of the employee's condition. Although the court of appeal remanded the case to allow plaintiff the opportunity to amend her pleadings, there is no way that she can amend the petition to state a cause of action. The exclusivity provision of the Workers' Compensation Act is clear: the rights and remedies provided under the Act "shall be exclusive of all other rights, remedies, and claims for damages ..." La. Rev.Stat.Ann. 23:1032(A)(1)(b). In Weber, we created an exception, in part, because the decedent died before he could seek judicial intervention for the defendant's refusal to pay for his medical treatment. OWC's new procedural structure adequately provides for immediate recourse for an employer's refusal to pay medical benefits. Ms. Kelly has availed herself of such recourse, and she has sought and received a remedy in workers' compensation. In addition to compensation benefits, she has been awarded penalties and attorney's fees provided for under the Act.
The "narrow exception" arrived at in Weber, resulted from intentional conduct on the part of an employer for refusing to pay for medical treatment, knowing that without such treatment, the decedent's condition was terminal. Unlike the decedent in Weber, Ms. Kelly's physical injuries were far from life-threatening. Under the facts of this case, the trial court properly granted the exception of no cause of action. Accordingly, we reverse the court of appeal's judgment and reinstate the decision rendered by the trial court, granting the exception of no cause of action and dismissing plaintiffs demands with prejudice.
REVERSED.
LEMMON, J., concurs and assigns reasons.
KIMBALL, J., concurs in result only.
CALOGERO, C.J., dissents and assigns reasons.
VICTORY, J., concurs in result.
LEMMON, J., Concurring
The majority fails to decide the issue that we granted certiorari to decidewhether an employee can ever, under any circumstances, state a cause of action in tort against his or her employer whose intentional and arbitrary denial of medical benefits causes the employee's disabling condition to undergo foreseeable disastrous worsening to a level something less than death. The majority opinion merely repeats the decision of the court of appeal that this plaintiff did not state a cause of action in her original petition. For largely unstated reasons, the majority then reverses the judgment of the court of appeal on the sole point of differencewhether plaintiff should have been allowed the opportunity to amend her petition.
The history of this case in the lower courts is interesting. The trial court maintained defendants' exception of no cause of action and dismissed the action. The court of appeal agreed that plaintiffs petition did not state a cause of action under the facts alleged therein and affirmed the trial court's maintaining the exception. However, the court of appeal remanded the case to the trial court under La.Code Civ. Proc. art. 934, allowing plaintiff fifteen days to amend her petition, if possible, to state a cause of action in accordance with the criteria outlined in the opinion. In effect, the court of appeal ruled that an employee possibly may, under some circumstances, have a cause of action in tort against the employer based on the employer's arbitrary refusal to provide medical benefits, but not under the circumstances alleged in plaintiffs original petition.
Defendants did not allow the orderly process contemplated by Article 934 of observing the delay for amendment and then renewing their exception to the amended petition or moving to dismiss for failure to comply timely with the order to amend. Rather, defendants applied for certiorari to this court, in effect complaining that they wanted an immediate ruling by this court on any amended petition that may be filed in the future.[1]
*1040 The majority opinion clearly does not grant the relief sought by defendants in their application for certiorari, which is a declaration by this court that under no circumstances can an employee in a non-death case ever have a cause of action in tort based on the employer's failure to provide medical benefits for a work-related injury. In effect, the majority (and I) await another case in which the issue is squarely presented.[2]
Finally, I expressly decline to join in the speculative discussion of how the facts in Weber "would" have been different under the post-Weber amendments. I see no purpose for the discussion in the absence of a decision on the issue which prompted our grant of certiorari, and I emphatically disagree with the "conclusion" that if the new Office of Workers' Compensation procedures had been in effect, "the State would have been ordered to pay the cost of [Weber's] transplant."
CALOGERO, C.J., dissenting.
The majority opinion seems to be saying that 1988 amendments to the Workers' Compensation Act preclude this plaintiff's claim. But then it goes on to say that it is the facts of the instant case, when compared to those of Weber v. State, 93-C-0062 (La.4/11/94), 635 So.2d 188, which preclude a finding that this plaintiff should prevail. I find this an inconsistency, and troubling.
In support of the proposition that there is no cause of action in this case, the majority states that the amendments to the workers' compensation scheme have made things better for claimants like the plaintiff because now the hearing officers are capable of making binding orders instead of mere recommendations. By implication, the majority finds these amendments to have obviated the need for allowing recovery in tort for cases where the employer has intentionally refused to pay for medical care with the knowledge or substantial certainty that the claimant's condition will substantially worsen as a result of its refusal. These changes in the law may have somewhat improved the position of an employee whose employer refuses to pay for necessary medicals, by affording the hearing officer the authority to "order" such treatment. However, they have not solved the problem for the employee whose employer has been ordered by the hearing officer to pay for necessary medical care, and who chooses to appeal that order rather than follow it, with the result for the employee a severe worsening of the medical condition.
Consequently, the question still remains as to whether Weber is applicable or should be extended to non-death cases where the employer's intentional refusal to pay medical expenses is substantially certain to result in a significant worsening of the claimant's condition. This was the reason why we granted this writ, and I do not see that the majority has answered the question. If the majority wants to say that the Workers' Compensation Act, as it reads today, precludes recovery in such cases, then it should do so. If not, then I think the case should be sent back to the district court so that the plaintiff can be allowed to amend her petition and present her evidence, just as the court of appeal decided. Then, the case can be decided on a full evidentiary record and proceed anew into the appellate courts. In my opinion, the court of appeal did not err in its decision granting the exception of no cause of action, then remanding to the hearing officer to allow the plaintiff to amend her petition.
NOTES
[*] Knoll, J., not on panel. See Rule IV, Part 2, § 3.
[2] On March 6, 1996, Ms. Kelly was terminated due to extensive absences. She was further informed to contact the defendant to discuss being re-hired in the event that her health improved, provided a position was available.
[3] Plaintiff's workers' compensation benefits were reinstated on June 10, 1996, and she was receiving benefits at the time of the OWC hearing.
[4] At the time the tort suit was filed, plaintiff's workers' compensation claim was still pending.
[5] The defendants alleged that they attempted to get clarification of Dr. Greer's report on January 10, 1996 but received no response. They further argued that their failure to reinstate Ms. Kelly's weekly benefits was because they were unaware of the reports of Dr. Home, Dr. McGuire, and Dr. Ledbetter.
[6] This 3-2 decision was authored by Judge Caraway who was joined by Judge Hightower and Gaskins. Chief Judge Marvin and Judge Norris dissented. The application for rehearing was denied.
[7] The panel which decided this matter consisted of Judges Brown, Williams and Peatross. The opinion was adhered by Judge Brown. Judge Peatross concurred in part and dissented in part, disagreeing with the majority decision to not follow Berry. The application for rehearing was denied.
[1] Of course, defendants had every right to apply for certiorari, and this court has the power to exercise its supervisory jurisdiction and to grant certiorari on any ruling at any stage of the proceeding. La. Const. art. V, § 5(A). However, I now question the wisdom of this court's exercising that power at this stage of the proceeding.
[2] The issue was squarely presented in Stevens v. Wal-Mart Stores, Inc., 29,124 (La.App.2d Cir.1/24/97), 688 So.2d 668, cert. denied, 97-0671 (La.5/9/97), 693 So.2d 768, but that case was in a pre-trial posture. I would prefer to wait for a case which has been tried on the merits rather than on an exception of no cause of action.