MARC E. JOHNSON, Judge.
12PIaintiff/appellant, Julie Adams (hereinafter referred to as “the Estate”), as executor of the estate of Jack Adams and on behalf of her deceased father Jack Adams, appeals the sustaining of a peremptory exception of no cause of action in favor of Northrop Grumman Ship Systems, Inc. f/k/a Avondale Industries, Inc. (hereinafter referred to as “Avondale”) from the 24th Judicial District Court, Division “F”. For the following reasons, we affirm the sustaining of the exception of no cause of action and remand the matter to the trial court for amendment of the petition.
FACTS AND PROCEDURAL HISTORY
Jack Adams was an employee of Avon-dale. In 1977, Mr. Adams suffered severe injuries to his left knee while acting in the course and scope of his employment. Mr. Adams reinjured his left knee during the course and scope of his employment on or about April 28, 1984. As a result of the injuries, Mr. Adams underwent total knee arthroplasty (“TKA”) to his left knee. After the surgery, Mr. |sAdams was able to return to work subject to a permanent partial disability. However, in 1987, Mr. Adams was declared permanently and totally disabled as a result of the injuries to his left knee. Avondale voluntarily paid workers’ compensation benefits to Mr. Adams for his disability pursuant to the Longshore and Harbor Workers’ Compensation Act.
On April 21, 2003, Mr. Adams reported to the office of Dr. Earl J. Rozas to address severe pain in his left knee. In August of 2003, it was discovered that Mr. Adams was suffering from a displaced fragment of cement which had broken free of the TKA hardware used in a previous knee surgery. Dr. Rozas recommended that Mr. Adams have surgery to remove the fragment, but the surgery was refused by Avondale’s workers’ compensation administrator.
On November 17, 2003, Mr. Adams reported to Ochsner Hospital, complaining of severe left knee pain. Mr. Adams was treated conservatively for his knee. On December 12, 2003, after failing to respond to the conservative treatment, Mr. Adams was diagnosed with a severely infected left *246 TKA, which was treated by debridement, synovectomy and placement of an antibiotic spacer. Four days later, on December 16, 2003, Mr. Adams was forced to undergo an emergency above-knee amputation of his left leg due to a rampant and life-threatening infection.
Mr. Adams filed a tort action against Avondale on December 10, 2004, alleging the company arbitrarily and capriciously refused to approve surgery for removal of the displaced cement fragment. Additionally, Mr. Adams alleged that the refusal to approve the surgery was an intentional act and was, therefore, within the intentional act exception to the Workers’ Compensation Act.
On July 8, 2013, Avondale filed a peremptory exception of no cause of action, asserting that Mr. Adams’ exclusive remedy as to Avondale was limited to |4the Louisiana Workers’ Compensation Act and could not be brought as a tort action. A supplemental and amending petition was filed on September 6, 2013, substituting the Estate as the plaintiff in the matter because Mr. Adams had passed away.[1] The supplemental and amending petition reiterated the same allegations set forth in the original petition. A hearing on the exception was held on September 25, 2013. In a judgment rendered on the same date, the trial court sustained Avondale’s exception of no cause of action and designated the judgment as final for appeal purposes. The Estate filed the instant appeal to review that judgment.
ASSIGNMENTS OF ERROR
On appeal, the Estate alleges the trial court erred in sustaining an exception of no cause of action based on an erroneous interpretation of supreme court jurisprudence. Alternatively, the Estate alleges the trial court erred in refusing to allow the Estate the opportunity to amend its petition.
LAW AND ANALYSIS

General Law

A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiffs right to judicially assert the action against the defendant. Show-Me Const., LLC v. Wellington Specialty Ins. Co., 11-528 (La.App. 5 Cir. 12/29/11); 83 So.3d 1156, 1159. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. No evidence may be introduced to support or controvert the exception raising the objection of no cause of action. Id. For the purpose of determining the issues raised by the exception, all facts pleaded in the petition must be accepted as true. Id. In reviewing a trial court’s ruling on a peremptory exception of no cause of 15action, the appellate court should conduct a de novo review because the exception raises a question of law, and the trial court’s decision is based only on the sufficiency of the petition. Id.

Exception of No Cause of Action

The Estate alleges the trial court erred in sustaining Avondale’s exception of no cause of action. The Estate insists that the petition pleaded a valid cause of action in the petition through alleging 1) Mr. Adams’ treating physician recommended surgery to remove a loose fragment of cement, and that this surgery was intentionally, arbitrarily and capriciously refused by Avondale; and 2) Avondale’s continued refusal to authorize the surgery caused a rampant and life-threatening in *247 fection which required the amputation of Mr. Adams’ left leg. Through these allegations, the Estate contends the petition stated a cause of action that fits within the narrow exception to the Workers’ Compensation Act set forth in Weber v. State, 93-62 (La.4/11/94); 635 So.2d 188.
The Estate asserts that Weber and its progeny, Kelly v. CNA Ins. Co., 98-454 (La.3/12/99); 729 So.2d 1033, provide that the exception enunciated is not limited to cases where the employee dies, but rather, only a “significant worsening” of the plaintiffs condition must be shown. The Estate further contends that the use of the language in Kelly reveals the intent of the supreme court to keep the Weber remedy available to workers’ compensation claimants who have been arbitrarily and capriciously denied medical benefits and who experience a significant worsening of their condition because of the denial. Alternatively, the Estate alleges the trial court erred in refusing to allow it the opportunity to amend its petition pursuant to La. C.C.P. art. 934.
Conversely, Avondale asserts the trial court properly sustained its exception of no cause of action because Weber and Kelly allow for a very limited cause of faction in tort only when the employee dies as a result of the employer’s arbitrary refusal to pay medical benefits. Avondale claims that the requested procedure was a surgical removal of a displaced fragment of cement, which was a non-life-threatening situation. Because Mr. Adams’ death was not a result of the failure to approve the knee surgery and the refusal to pay was not “an intentional and arbitrary act taken despite the knowledge that death was substantially certain to follow” as required by Weber, Avondale argues that the Estate’s recourse was solely through a workers’ compensation claim, not an action in tort.
In Weber, supra, a wrongful death action was filed against the employer for the intentional refusal to authorize medical treatment for the deceased employee’s occupational disease, when the treatment was necessary to save the employee’s life. The issue presented was whether the employee’s survivors had a cause of action to recover tort damages under the facts alleged in the petition or whether they were relegated to the statutory compensation remedies for the employer’s arbitrary and capricious failure to provide the necessary treatment. The Louisiana Supreme Court held that an employers’ intentional and arbitrary denial of necessary medical expenses for an employee, if proven, may result in liability for damages beyond the remedies provided in the Workers’ Compensation Act, when: 1) the conduct and the resulting injury does not occur in the course of employment and only marginally arises out of employment, and 2) the employer knew to a substantial certainty the denial would cause death that would not otherwise have occurred. Id. at 193-94.
The court also held that the narrow exception to the general rule that penalties and attorney’s fees are the exclusive remedy for the employer’s misconduct in handling the administration of compensation claims only applies when there is intentional conduct and when the employer acts arbitrarily despite |7knowledge that death is substantially certain to follow. Id. at 194. However, the court reserved decision on whether the exception would apply if the employer arbitrarily denies payment of necessary medical expenses despite knowledge that a significant worsening of the employee’s condition is substantially certain to follow the denial. Id. at n. 9.
In Kelly, supra, Linda Kelly, an injured employee, filed a workers’ compensation claim and a tort action seeking damages against her employer and its insurer for *248 the worsening of her carpal tunnel syndrome after the employer terminated her benefits and failed to pay her medical expenses. In its analysis, the supreme court revisited the Weber decision. The court explained that the exception in Weber was created prior to amendments to the Louisiana Constitution and the Workers’ Compensation Act, and the new procedural structure of the Office of Workers’ Compensation provides for immediate recourse for an employer’s refusal to pay medical benefits. Id. at 1038. After comparing the facts of Weber to the facts of the case before it, the court found that the Workers’ Compensation Act provided the exclusive remedy to Ms. Kelly for the non-life-threatening carpal tunnel syndrome injuries she incurred. The court stated that the employer’s arbitrary denial or delay of medical treatment in that matter would not result in death or a significant worsening of Ms. Kelly’s carpal tunnel syndrome. Id. at 1039. The court concluded that the narrow exception arrived at in Weber, resulted from intentional conduct on the part of an employer for refusing to pay for medical treatment, knowing that without such treatment, the decedent’s condition was terminal. In his concurrence, Justice Lemmon opined that the majority opinion failed to decide the issue of whether an employee can ever, under any circumstances, state a cause of action in tort against his or her employer whose intentional and arbitrary denial of medical benefits causes the employee’s disabling 1 ¿¡condition to undergo foreseeable disastrous worsening to a level something less than death.
From our review of the language used in the Kelly decision, we do not find that the remedy for an intentional denial of the payment of necessary medical expenses when the employer has knowledge that a significant and life-threatening worsening of the employee’s condition is substantially certain to follow the denial lies exclusively within the Workers’ Compensation Act. The supreme court emphasized that the facts in Kelly did not fit within the narrow exception provided in Weber. However, the court’s statement that “the employer’s arbitrary denial or delay of medical treatment would not result in death or a significant worsening of the employee’s condition” leads us to conclude that the arbitrary denial or delay in treatment resulting in a significant and life-threatening worsening of an employee’s condition are factors in deciding whether the remedy could lie within a tort action. Thus, we hold that an employer’s arbitrary denial or delay in treatment, when the employer has knowledge that a significant and life-threatening worsening of an employee’s condition is substantially certain to follow the denial, is an exception to the Workers’ Compensation Act’s exclusive remedy. Now, we will examine whether the petition in this matter states a cause of action that fits within that exception.
In the case at bar, the petition alleges Mr. Adams suffered from a displaced fragment of cement, which had broken off from the TKA hardware in his left knee, and Avondale arbitrarily and capriciously refused to authorize the surgery to remove the fragment from Mr. Adams’ left knee. Additionally, the petition alleges that Mr. Adams was diagnosed with an infected left TKA, and after other treatments were to no avail, an above-knee amputation was performed on the left leg due to a serious and life-threatening infection. The petition further alleges that | ¡Avondale ⅛ liable for the arbitrary and capricious refusal to approve necessary preventative surgery for the removal of the displaced cement that caused Mr. Adams to undergo amputation of his left leg above the knee.
*249 After our de novo review, we find that the petition does not sufficiently state a viable cause of action against Avondale. As discussed above, a tort action where a significant and life-threatening worsening of the employee’s condition is substantially certain to follow an employer’s arbitrary denial of necessary medical expenses does fit within the narrow exception to the Workers’ Compensation Act. The petition in this matter alleges Mr. Adams had his left leg amputated due to a serious and life-threatening infection, and Avondale failed to authorize medical payments for the surgery. Nevertheless, the petition does not specifically allege that the serious and life-threatening infection was directly linked to the failure to remove the fragment from Mr. Adams’ knee, or that Avon-dale’s refusal to approve the necessary surgery caused a life-threatening condition to develop, which subsequently resulted in the amputation of his left leg. As such, we affirm the trial court’s sustaining of the exception of no cause of action. However, pursuant to La. C.C.P. art. 934, we remand the matter to the trial court to allow the Estate to amend its petition to state a cause of action that fits within the exception to the Workers’ Compensation Act.
DECREE
For the foregoing reasons, we affirm the sustaining of the peremptory exception of no cause of action. Additionally, we remand the matter to the trial court to allow the amendment of the petition pursuant to La. C.C.P. art. 934.

AFFIRMED; REMANDED.

. The record before us does not indicate the date of Mr. Adams’ death.