635 So.2d 188 (1994)
Theresa WEBER, et al.
v.
STATE of Louisiana.
No. 93-C-0062.
Supreme Court of Louisiana.
April 11, 1994.
Concurring Opinion April 12, 1994.
Rehearing Denied May 12, 1994.
*190 Robert C. McCall, William B. Baggett, Lake Charles, for applicants.
Michael J. McNulty, III, Andrew Lane Plauche, Lake Charles, for respondent.
Concurring Opinion by Justice Kimball April 12, 1994.
LEMMON, Justice[*].
This is a wrongful death action by the widow and children of Charles Weber, Sr. against Weber's employer, the State of Louisiana, based on the employer's intentional refusal to authorize medical treatment for Weber's occupational disease, when the treatment was necessary to save Weber's life. The issue is whether the employee's survivors have a cause of action to recover tort damages under the facts alleged in the petition or whether they are relegated to the statutory compensation remedies for the employer's arbitrary and capricious failure to provide the necessary treatment. Stated otherwise, the issues are whether the employer has total immunity under La.Rev.Stat. 23:1032 from tort liability for any and all damages resulting from its allegedly arbitrary and capricious refusal to furnish necessary medical expenses and whether the penalties and attorney's fees provisions of La. Rev.Stat. 23:1201 E and 1201.2 are the employee's (or his survivors') exclusive remedy against his employer when the employer intentionally and arbitrarily refuses to pay for medical benefits necessary to treat a compensable injury or disease, knowing that death to the employee is substantially certain to result from the arbitrary refusal.
According to the petition, Weber contracted an occupational disease in early 1984. The State immediately commenced payment of workers' compensation benefits. In March of 1988, Weber's condition worsened, and his treating physician advised him and the State that his condition was terminal unless he had a heart transplant. When the State refused to authorize the medical work-up for the transplant, Weber submitted the matter to the Office of Worker's Compensation (OWC). On March 29, 1988, the OWC recommended that the State pay all medical expenses related to the transplant.[1] The State again refused to authorize the treatment. Before Weber's attorney could seek judicial intervention, Weber died on April 17, 1988.
This tort action ensued, in which Weber's survivors are seeking damages for Weber's wrongful death caused by the State's intentional act in refusing to authorize the medical treatment after having been advised by the treating physician that death was certain to follow any delay in providing a transplant for Weber and after the OWC recommended payment for the heart transplant.
The State filed a peremptory exception of no cause of action, asserting that La.Rev. Stat. 23:1032 provides the exclusive remedy for any employee covered by the Workers' Compensation Act.[2] The State asserted that when an employee is disabled by an occupational accident or disease and the employer arbitrarily refuses to pay weekly benefits or medical treatment expenses, the exclusive remedy of the employee is to demand penalties and attorney's fees provided under La. Rev.Stat. 23:1201 E and 1201.2.[3]
*191 The trial court granted the exception of no cause of action and dismissed the action.
The court of appeal affirmed. 608 So.2d 1016. The court held that the underlying policies of the Act require that the "intentional act" exception not be read expansively to include an employer's refusal to pay medical expenses as an intentional act which removes the employer from the exclusivity provisions of Section 1032. 608 So.2d at 1019. The court pointed out that the Act, in Sections 1201 E and 1201.2, provides a remedy to the employee for the employer's arbitrary refusal to pay benefits or medical expenses. Relying on Boudoin v. Bradley, 549 So.2d 1265 (La.App. 3d Cir.1989), and Banes v. American Mut. Liab. Ins. Co., 544 So.2d 700 (La.App. 3d Cir.1989), the court reasoned that the Legislature had fairly balanced the exchange of rights between the employer and the employee in the Act by providing the employee with the recovery of a twelve-percent penalty and reasonable attorney's fees when the employer arbitrarily and capriciously refuses to pay a claim. 608 So.2d at 1018-19.
We granted certiorari to review the decisions of the lower courts. 612 So.2d 88.
Under the Workers' Compensation Act, the employer is liable for compensation benefits to an employee who is injured as a result of an accident arising out of and in the course of employment. La.Rev.Stat. 23:1031. The employer is also liable for all necessary medical expenses. La.Rev.Stat. 23:1203. An employee who is disabled because of contracting an occupational disease or sickness, attributable to causes and conditions characteristic of the particular employment, is also entitled to compensation benefits and necessary medical expenses, just as if he had been injured by an employment accident. La.Rev. Stat. 23:1031.1. The rights and remedies under Chapter 10 of the Act, La.Rev.Stat. 23:1021-1415, provide the employee's exclusive remedy against the employer for such injury or disease. La.Rev.Stat. 23:1032. When the employer seeks to avail itself of tort immunity under Section 1032, the employer bears the burden of proving entitlement to the immunity. Mundy v. Department of Health & Human Resources, 593 So.2d 346 (La.1992).
The function of the peremptory exception of no cause of action is to determine whether the law affords any remedy to the plaintiff under the allegations of the petition. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Darville v. Texaco, Inc., 447 So.2d 473 (La.1984). For purposes of the determination, the allegations of the petition are accepted as true, and any doubts are *192 resolved in favor of the sufficiency of the petition. Id. No evidence can be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ.Proc. art. 931. Of course, the plaintiff at trial must prove the allegations of the petition essential to his cause of action in order to prevail.
Two separate and distinct incidents, according to the allegations of the petition, caused two separate and distinct injuries to the employee. The first incident was the employee's contraction of an occupational disease which caused his permanent disability. This incident gave rise to the employer's statutory obligation to pay compensation benefits and medical expenses, which the employer paid for four years. The recovery of these benefits and medical expenses was the employee's exclusive remedy against the employer for the first incident.
The second and separate incident, which caused a separate injury to the employee, was the employer's conduct four years later during the administrative handling of the compensation claim. According to the petition, the employer arbitrarily refused to pay the medical expenses for a heart transplant necessitated by the employee's condition for which the employer was paying benefits. The second incident did not produce the original compensable injury. However, according to the petition, the employee had a chance of survival if the employer had fulfilled its statutory obligation to pay necessary medical expenses, and the employee's second and separate injury was his loss of that chance of survival caused by the employer's breach of its statutory obligation.[4]
The incident that caused this additional injury to the employee, over and above the injury that he suffered as a result of the incident of contracting the occupational disease on the job, did not occur during the course of his employment and only indirectly arose from his employment.[5] When the incident occurred, the employee had not been in the course of employment on the job premises during working hours for four years. Moreover, the risk of the injury suffered was, at best, only marginally incidental to his employment in that the employer, but for the employment, would not have been obligated to pay the medical expenses in the first place and the employee would not have died as he did but for the occupational disease he contracted on the job. In other words, the injury was causally related to employment only because it involved a relationship to the employee's previous work-related injury. Accordingly, the second injury resulting from the second incident appears not to be covered by the compensation act, since it did not occur during the course of employment and only marginally arose out of employment.
The State contends, however, that the remedy for this very conduct (arbitrarily refusing to provide necessary medical treatment) is provided by the Act which imposes penalties and attorney's fees for such conduct. The State argues that the exclusivity principles of the Act would soon be washed away in the tide of lawsuits if the courts allowed an employee to file a tort suit seeking damages for a worsened condition or for *193 mental anguish caused by the employer's delays in paying compensation benefits or medical expenses.
A tort is a breach of duty which results in damages. Here, the employer allegedly breached its duty to furnish necessary medical expenses and caused Weber to lose his chance of survival. Ordinarily, this breach would result in tort liability because the injury did not occur in the course of employment and, at best, only marginally arose out of employment. However, the duty breached by the employer was a duty imposed by the Workers' Compensation Act and was one for which the Act arguably imposed a penalty for the breach thereof. The issue turns on a determination of legislative intent regarding the scope of the penalty provision.
In enacting the penalties and attorney's fees provisions in La.Rev.Stat. 23:1201 E and 1201.2, the Legislature recognized that some employers, unless faced with possible penalties, may not pay appropriate attention to an employee's compensation claim. The purpose of these penalties is to nudge the employer into making timely payments when there is no reasonable basis for refusing or delaying its obligation. And when the employer's delay causes mere harassment or mental anguish to the employee, these damages arguably fall within the legislative contemplation that penalties and attorney's fees provide the exclusive remedy. See Physicians and Surgeons Hospital, Inc. v. Leone, 399 So.2d 806 (La.App. 3d Cir.), cert. denied, 401 So.2d 993 (La.1981); see generally 2A Arthur Lawson, Law of Workmen's Compensation §§ 61.12(i), 68.34(c) (1992).
La.Rev.Stat. 23:1032 is an immunity statute, as are La.Rev.Stat. 23:1201 E and 1201.2 in the context of this case. Immunity statutes must be strictly construed against the party claiming the immunity. In the present case the employer is claiming immunity for alleged reprehensible injurious conduct far beyond that contemplated by the Legislature as protected by a limitation to penalties and attorney's fees.
The normal situation contemplated by the Legislature is when the employee, after the employer's arbitrary refusal to pay compensation benefits or necessary medical expenses, takes the matter to court and obtains a judgment ordering payment of "the amount of the claim due," plus a penalty and "reasonable attorney's fees for the prosecution and collection of such claim...." La.Rev.Stat. 23:1201.2. Here, the employee died before he could pursue the matter in court after exhausting his administrative remedy.
Moreover, there is arguably no amount due on which penalties and attorney's fees can be imposed. The medical expenses sought by Weber were never incurred because he died before he could get a court order for the payment (an order which possibly was appealable). An employer faced with the claim that Weber presented in this case could arbitrarily refuse the claim and thereby relieve itself of the obligation of paying for a heart transplant while never being exposed to penalties and attorney's fees. Indeed, such an employer could relieve itself of its compensation obligation entirely.[6] The Legislature certainly could not have intended such consequences. We therefore conclude that the Legislature did not intend that the exclusive remedy of penalties and attorney's fees for an employer's intentional and arbitrary refusal to provide medical treatment to a compensation victim would encompass the situation where the employer knew to a substantial certainty that the refusal would cause death that would not otherwise have occurred.[7]
We hold that the State's alleged conduct in intentionally and arbitrarily denying necessary medical expenses,[8] if proved, may result in liability for damages beyond the remedies provided in the Workers' Compensation Act, when the conduct and the resulting injury does not occur in the course of employment and only marginally arises out *194 of employment, and when the employer knew to a substantial certainty the denial would cause death that would not otherwise have occurred. This is a narrow exception to the general rule that penalties and attorney's fees are the exclusive remedy for the employer's misconduct in handling the administration of compensation claims. The exception applies only when there is intentional conduct and when the employer acts arbitrarily despite knowledge that death is substantially certain to follow.[9]
For these reasons, the judgments of the lower courts are reversed, the exception of no cause of action is overruled, and the case is remanded to the district court for further proceedings.
MARCUS and KIMBALL, JJ., concur and assign reasons.
WATSON, J., recused.
MARCUS, Justice (concurring).
I agree the majority's holding that in this limited situation where an employee dies prior to seeking a judicial determination that his employer was arbitrary and capricious in failing to pay medical expenses, the employee's survivors have a cause of action against the employer in tort. Under these circumstances, the employer should not profit from the fact that the employee's death has eliminated the need for medical expenses. However, in those situations where the employee does not die, I would find that his exclusive remedy for the arbitrary refusal by the employer to pay benefits is penalties and attorney fees under La.R.S. 23:1201 E and La. R.S. 23:1201.2. I would not allow an employee who has a remedy under these provisions to file a tort suit, since such a suit would clearly run counter to the exclusive remedy provision of La.R.S. 23:1032.
KIMBALL, Justice (concurring).
I concur in the result achieved by the majority's opinion in this case, but I respectfully disagree with the majority's reasoning.
The majority achieves the correct result by creating an exception to the general rule that penalties and attorney's fees are the exclusive remedy under the Worker's Compensation Act for an employer's arbitrary denial of benefits. According to the majority, the exception applies
when the conduct and the resulting injury does not occur in the course of employment and only marginally arises out of employment, and when the employer knew to a substantial certainty the denial would cause death that would not otherwise have occurred.... The exception applies only when there is intentional conduct and when the employer acts arbitrarily despite knowledge that death is substantially certain to follow.
(Emphasis added.)
In my view, the Act itself creates the applicable exception when it states: "Nothing in this Chapter shall affect the liability of the employer ... resulting from an intentional act." La.R.S. 23:1032 (emphasis added). This "intentional act" exclusion would not apply where an employer arbitrarily and capriciously denies benefits without knowing death or injury is substantially certain to follow because such a denial of benefits does not rise to the level of an "intentional act." However, where an act is arbitrary and capricious and intentional, in that "the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead," Bazley v. Tortorich, 397 So.2d 475, 482 (La.1981), then the "intentional act" exclusion applies and the exclusive remedy rule is inapplicable. Moreover, contrary to the appellate court's reasoning in Dycus v. Martin Marietta Corp., 568 So.2d 592, 594 (La.App. 4th Cir.), writ denied, 571 So.2d 649 (1990), relied on by the court of appeal below, neither the Act nor the jurisprudence of this court compels the conclusion that the "intentional act" exclusion "applies only to acts which can be classified as traditional intentional tortssuch as battery, assault, false imprisonment, etc."
In the present case, accepting the facts alleged in plaintiffs' petition as true for purposes of ruling on the State's exception of no cause of action, it appears Weber's treating physician informed the State that Weber would die unless he had a heart transplant, *195 and the Office of Worker's Compensation recommended that the State pay for Weber's heart transplant "in accordance with the Act." These allegations appear to indicate that after weighing the cost of a heart transplant against the cost of penalties and attorney's fees for arbitrary and capricious denial of benefits, the State deliberately and calculatedly chose to deny the necessary treatment. Thus, not only did the State arbitrarily and capriciously deny Weber's medical treatment, it did so while knowing Weber's death was substantially certain to result from the denial. In other words, because the State knew their arbitrary and capricious denial of benefits was substantially certain to result in Weber's death, the State's liability for Weber's death "result[s] from an intentional act" within the meaning of the "intentional act" exclusion. La.R.S. 23:1032. Accordingly, I believe the "intentional act" exclusion applies and the Act's exclusive remedy rule is inapplicable. See Caudle v. Betts, 512 So.2d 389 (La.1987); Bazley, supra.
Additionally, I do not find it pertinent that the State's denial of benefits and Weber's resulting death "did not occur during the course of employment and only marginally arose out of employment." First, the penalty and attorney's fee provisions of the Act do not require the denial of benefits to arise out of employment or to occur during the course of employment. See La.R.S. 23:1201(E); La. R.S. 23:1201.2. Secondly, it seems to me an employer's arbitrary refusal to provide necessary medical treatment would seldom if ever occur during the course of employment and probably would always arise out of employment only marginally. The fact that the State's arbitrary denial of benefits and Weber's resulting death "did not occur during the course of employment and only marginally arose out of employment" therefore should be irrelevant to the determination of whether the Act provides the exclusive remedy for Weber's injury. As explained above, the Act does not provide the exclusive remedy for Weber's injury because the State's liability for its intentional act falls within the "intentional act" exception to the Act's exclusive remedy rule.
In short, I believe the majority employed an incorrect analysis to achieve a correct result. Accordingly, I concur in the result only.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Dennis, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] At the time in question, orders issued by OWC were only recommendations and not binding.
[2] At the time of Weber's death, La.Rev.Stat. 23:1032 provided in part:

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease....
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
[3] At the time of Weber's death, La.Rev.Stat. 23:1201 E provided:

E. If any installment of compensation payable without an order is not paid within the time period provided in Subsection (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee. (emphasis added).
At the time of Weber's death, La.Rev.Stat. 23:1201.2 provided:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter. (emphasis added).
[4] At the trial on the merits, plaintiffs will be required to prove that there was a chance of survival and can recover only for that loss.
[5] This court has considered the terms "arising out of" and "in the course of" in Section 1031 as dual requirements that cannot be considered in isolation from each other. In a close case, a strong showing with reference to one requirement may compensate for a weak showing with reference to the other requirement. Raybol v. Louisiana State University, 520 So.2d 724, 726 (La.1988). When there is a weak showing with respect to both requirements, the employee is not entitled to compensation benefits. Id.

In the "course of employment" requirement, the court focuses on whether the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at a place contemplated by employment activities. Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989); Wex S. Malone & H. Alston Johnson, 13 Louisiana Civil Law TreatiseWorkers' Compensation Law and Practice § 161 (2d ed. 1980). This inquiry focuses upon the time and place relationship between the injury (or disease) and the employment.
In the "arises out of employment" requirement, the court inquires into the character or origin of the risk suffered by the employee and determines whether this risk was incidental to the employment. Williams v. Regional Transit Authority, 546 So.2d at 150 (La.1989); Wex S. Malone & H. Alston Johnson, supra at § 191. An injury arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Mundy v. Department of Health & Human Resources, 593 So.2d 346 (La.1992).
[6] In the present case, Weber's dependents may not even be entitled to death benefits under the Act which at the time denied death benefits when the death did not occur within two years after the accident. La.Rev.Stat. 23:1231.
[7] Of course, plaintiffs face a large stumbling block in proving that the State acted arbitrarily and with the knowledge that Weber's death was substantially certain to result from its arbitrary refusal.
[8] Arbitrary denial (if proved) of medical expenses necessary to save an injured employee's life is even more egregious than arbitrary denial of compensation benefits necessary for an injured employee's food, shelter and clothing.
[9] We reserve for another day the decision on whether the exception would apply if the employer arbitrarily denies payment of necessary medical expenses despite knowledge that a significant worsening of the employee's condition is substantially certain to follow the denial.