732 So.2d 714 (1999)
Myrtle FOSTER, Plaintiff-Appellant,
v.
F.A. RICHARD & ASSOCIATES, INC. and Doreen McSpadden, Defendants-Appellants.
No. 98-1621.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1999.
Writ Denied June 25, 1999.
*715 Randall Scott Iles, for Myrtle Foster.
Michael Gerard Lemoine, Lafayette, for F.A. Richard & Associates, Inc., et al.
Before: DOUCET, C.J., SAUNDERS, and SULLIVAN, JJ.
DOUCET, Chief Judge.
Plaintiff, Myrtle Foster, appeals a judgment of the trial court sustaining Defendants' peremptory exception of no cause of action. We affirm the judgment of the trial court.

FACTS
This is an attempt by Plaintiff, Myrtle Foster, to bring tort claims against Defendants, F.A. Richard & Associates, Inc. (also doing business as FARA Healthcare Management), and Doreen McSpadden, a vocational rehabilitation consultant employed by FARA Healthcare Management. The Defendants are the worker's compensation adjusting firm and one of its employees, handling the worker's compensation benefits for Plaintiffs employer, Liberty Rice Mill. Plaintiff was previously before this court in Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/96); 690 So.2d 792. We quote the pertinent facts from that opinion:
Myrtle Foster ... injured her left wrist while acting in the course and scope of her employment with Liberty Rice Mill on December 18, 1991. Ms. Foster ... was sent by her employer to see Dr. Suresh Patel, the company doctor. In January 1992, Dr. Patel referred Ms. Foster to orthopaedic surgeon Dr. Roland Miller.
. . . .
Dr. Miller first saw claimant on February 19, 1992, and diagnosed her with De Quervain's syndrome, a disabling neurological condition afflicting claimant's left hand, wrist, and arm. After Dr. Miller's conservative treatment proved unsuccessful, nerve release surgery recommended by Dr. Miller on April 6 was performed five months later, on September 22, 1992. At first, the results of Dr. Miller's surgery appeared encouraging, and Dr. Miller believed that Ms. Foster might be able to return to work after a several month convalescence....
Unfortunately, Ms. Foster's case took a turn for the definite worse as of April 28, 1993, by which time her symptoms unmistakably had begun to reappear. According to Dr. Miller, Ms. Foster "had been doing very well up until approximately two weeks ago when she started having some catching again in the wrist and this has happened several times and caused some pain."
This controversy arose when Ms. Foster's employer reduced her benefits the following summer. Ms. Foster had received TTD benefits at the rate of $164.69 per week, based on an average weekly wage of $247.03, until August 30, 1993, when her benefits were converted to SEB and reduced to $31.35 per week on the avowed grounds of a medical report by one of the company's two physicians and a report from a vocational rehabilitation consultant [Ms. McSpadden] retained by the employer.
A Form 1008 was filed by Ms. Foster on September 21, 1993, in which she sought TTD or permanent total disability benefits, and medical treatment.... [T]he matter was tried on March 15, 1995. The hearing officer took the matter under advisement. After considering the testimony presented by Ms. Foster, *716 vocational rehabilitation consultants, live testimony, employees of allegedly prospective employers, and of Drs. Miller and Morrow, the hearing officer rendered judgment on January 5, 1996, awarding claimant TTD, penalties, and $7,500.00 in attorney fees. The judgment additionally awarded Ms. Foster medical treatment in accordance with a July 20, 1995, medical report requested by the hearing officer while the matter was under advisement.
Id. at pp. 1-3; 794-95.
We affirmed the judgment of the worker's compensation judge, Ms. Foster was brought up to date in her benefits the following month, and she filed the instant action on May 8, 1997.

LAW AND DISCUSSION
The issue before us is whether the trial judge properly sustained Defendants' peremptory exception of no cause of action.
The exception raising the objection of no cause of action questions "whether the law extends a remedy to anyone under the factual allegations of the petition." Williams v. Mumphrey, 95-643 (La.App. 5 Cir. 1/30/96), 668 So.2d 1274, writ not considered, 96-0569 (La.3/29/96), 670 So.2d 1240; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm'n, 94-2015 (La.11/30/94), 646 So.2d 885, 888 n. 3; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (La.1972).... La. C.C.P. art. 931 ... does not permit the introduction of evidence to support or controvert an exception of no cause of action.
Smith v. Trattler, 96-225, p. 2 (La.App. 5 Cir. 9/18/96); 681 So.2d 961, 962-63.
Further, "All facts pleaded in the petition are accepted as true without reference to any extraneous supporting or controverting evidence and all doubts are resolved in favor of the sufficiency of the petition. La.Code Civ.P. art. 931; Roberts [v. Sewerage and Water Board of New Orleans, 92-2048 (La.3/21/94); 634 So.2d 341] at 342-343." Property Asset Management, Inc. v. Pirogue Cove Apartments, 97-0212, p. 4 (La.App. 4 Cir. 4/11/97); 693 So.2d 1217, 1220.
The pertinent part of Plaintiff's petition, which is contained in paragraphs numbers fifteen, sixteen, seventeen and eighteen reads as follows:
15.
Though the obligation imposed on F.A. Richard & Associates Inc. as the administrator of the worker's compensation claims of Liberty Rice Mill would require appropriate vocational rehabilitation under L.A.-R.S. 23:1226, F.A. Richard & Associates Inc. has failed and refused to provide the same. Instead, F.A. Richard & Associates Inc. set up a business known as "FARA Healthcare Management", which served as a subterfuge for the employer to orchestrate a diversionary program designed to "... betray the salutary principles and obfuscate the ameliorative objectives of our worker's compensation laws."
16.
The actions of Doreen McSpadden and F.A. Richard & Associates Inc. in this case in failing to provide appropriate vocational rehabilitation caused much mental and physical suffering on the part of Myrtle Foster from the time her worker's compensation benefits were terminated in August of 1993 until the time Myrtle Foster was paid worker's compensation benefits on January 10, 1997. The actions of Doreen McSpadden and F.A. Richard & Associates Inc. was outrageous, egregious, and intentional. The actions of the defendants were designed with intent to cause emotional distress in order to obtain an unfair advantage over Myrtle Foster, and apparently in an effort to place itself in a posture to either deny future medical and indemnity benefits under the *717 Worker's Compensation laws or posture itself in an unfair settlement position.
17.
Furthermore, the actions of F.A. Richard & Associates Inc. in failing and refusing to authorize medical treatment recommended by its doctor caused Myrtle Foster to suffer needlessly from August of 1993 until March of 1997. Furthermore, Myrtle Foster has a diminished ability for recovery from her sympathetic reflex dystrophy because of the delay in medical treatment caused by F.A. Richard & Associates Inc. The actions of F.A. Richard & Associates Inc. is outrageous, egregious and an intentional infliction of physical and emotional distress upon Myrtle Foster.
18.
Under the provisions of L.A.-CC. Article 2324, it is alleged that F.A. Richard & Associates Inc. and its employee, Doreen McSpadden, conspired together to cause injury to Myrtle Foster. Accordingly, these defendants are liable in solido for all damage created as a consequence of their actions described above.
Thus we must decide if the trial judge was correct when he found that Plaintiff's petition failed to state a cause of action against Defendants.
We find the situation in the case sub judice very similar to that presented in Stotts v. City of Lafayette, 97-1251, pp. 1-3 (La.App. 3 Cir. 3/6/98); 708 So.2d 820, 821-822:
James P. Stotts, Jr. filed suit against his employer, Lafayette City-Parish Consolidated Government (hereinafter referred to as the City of Lafayette), for injuries allegedly sustained as a result of exposure to toxic industrial paint. He contends that defendant's "intentional" refusal to approve and pay for medical treatment entitles him to sue his employer in tort. The defendant filed a peremptory exception of no cause of action on the grounds that plaintiff's exclusive remedy lies under the Workers' Compensation Act. The trial court granted the exception, dismissing plaintiff's claim with prejudice. Plaintiff appeals. We affirm.
. . . .
Plaintiff argues that he is entitled to sue his employer in tort relying on the Louisiana Supreme Court case of Weber v. State, 93-0062 (La.4/11/94); 635 So.2d 188. Defendant argues that by granting a tort remedy to an employee who died as a result of the arbitrary and capricious management of a workers' compensation claim, our supreme court in Weber undercut the "great compromise" that has existed since 1914, when our legislature passed the first workers' compensation law. Prior to Weber, an employee's exclusive remedy for the employer's arbitrary and capricious refusal to pay benefits or medical expenses is provided for in La.R.S. 23:1201(E) and 23:1201.2.
The holding of Weber is that an employer's alleged conduct in intentionally and arbitrarily denying necessary medical expenses, if proved, may result in liability for damages beyond the remedies provided in the Workers' Compensation Act, when the conduct and resulting injury does not occur in the course of employment and only marginally arises out of the employment, and when the employer knew to a substantial certainty that denial would cause death that would not otherwise have occurred. The court went on to state:
This is a narrow exception to the general rule that penalties and attorney's fees are the exclusive remedy for the employer's misconduct in handling the administration of compensation claims. The exception applies only when there is intentional conduct and when the employer acts arbitrarily despite knowledge that death is substantially certain to follow.

*718 Id. at 194. (Emphasis added).
Thus, the holding of Weber is limited to the facts of that case. Note Justice Marcus' concurrence:
I agree [sic] the majority's holding that in this limited situation where an employee dies prior to seeking a judicial determination that his employer was arbitrary and capricious in failing to pay medical expenses, the employee's survivors have a cause of action against the employer in tort. Under these circumstances, the employer should not profit from the fact that the employee's death has eliminated the need for medical expenses. However, in those situations where the employee does not die, I would find that his exclusive remedy for the arbitrary refusal by the employer to pay benefits is penalties and attorney's fees under La.R.S. 23:2101 E and La. R.S. 23:1201.2. I would not allow an employee who has a remedy under these provisions to file a tort suit, since such a suit would clearly run counter to the exclusive remedy provision of La.R.S. 23:1032.

Id. at 194.
We note that in two cases the Second Circuit has chosen to expand the holding in Weber. See Stevens v. Wal-Mart Stores, Inc., 29,124 (La.App. 2 Cir. 1/24/97), 688 So.2d 668; writ denied, 97-0671 (La.5/9/97); 693 So.2d 768 (in denying the writ the Court stated: "Relator may reurge issue on appeal in event of adverse judgment.") and Kelly v. CNA Ins. Co., 29,455 (La.App. 2 Cir. 1/23/98); 706 So.2d 198, writ granted, 98-0454 (La.4/3/98); 717 So.2d 225. We chose not to follow our brethren of the Second Circuit, but prefer to follow our brethren of the Fifth Circuit. See Payne v. Tonti Realty Corp., 98-76 (La.App. 5 Cir. 6/30/98); 714 So.2d 1271.
Plaintiff argues that even if she does not have a claim against F.A. Richard & Associates, Inc., she does have a claim against Doreen McSpadden for breaching the duty she owed to Plaintiff as her vocational rehabilitation consultant. We find no such claim in Plaintiffs petition. Even if we were to liberally interpret Plaintiffs petition to include such a claim, we find such a claim states no cause of action. Such a claim was considered by the Fourth Circuit in Suarez v. Metropolitan Erection Co., 559 So.2d 29, 30 (La.App. 4 Cir.), writ denied, 561 So.2d 117 (La.1990):
On May 8, 1987, plaintiff was injured on the job while employed as an iron worker by Metropolitan Erection Company. He made a claim against Metropolitan under the Louisiana Worker's Compensation Statute ("LWCS"), which claim was decided in his favor, and began receiving worker's compensation benefits. Metropolitan is insured by National Union Fire Insurance Company of Pittsburgh, but plaintiffs claim was managed by an independent adjusting company, AIAC. After filing his initial claim, plaintiff filed a supplemental and amending petition asserting a second cause of action in tort and contract against AIAC only, for the allegedly negligent handling of plaintiffs claim. Plaintiff later added AIHRS, a rehabilitation consulting firm hired by AIAC, as a defendant in this second cause of action. Finally, plaintiff asserted a third cause of action in intentional tort against AIAC and AIHRS, alleging that they deliberately delayed medical payments and authorization for necessary medical treatment. AIAC and AIHRS responded by filing an exception of no cause of action, which was upheld by the district court.
We find that the district court was correct in dismissing plaintiffs claims because under the LWCS, AIAC and AIHRS are immune from this type of suit. It is well settled that an injured employee's rights under LCWS [sic] are exclusive of his rights in tort against his employer. A specific provision of the statute, La.R.S. 23:1201.2, sets forth penalties which are the injured worker's exclusive remedy against an insurer for *719 the discontinuance of payments or the failure to make timely payments, whenever such is found to be arbitrary and capricious. It is logical that an adjusting company, who manages the claim for the insurer, as well as a rehabilitation service that assists the adjusting company, must stand in the shoes of the insurer and share the same tort immunity granted to the insurer. Any other result would circumvent the obvious intent of the statute.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
SAUNDERS, J., would affirm as to the rehabilitation group and would reverse as to F.A. Richard & Associates, inc., and follow the 2nd Circuit's decisions in Stevens v. Wal-Mart and Kelly v. CNA Ins. Co. as to the proper interpretation of the Weber decision.