747 So.2d 115 (1999)
Robert Lee CHASE, Plaintiff-Respondent,
v.
LOUISIANA RIVERBOAT GAMING PARTNERSHIP, et al., Defendants-Applicants.
No. 31,610-CW.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*116 Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, Julia A. Mann, Shreveport, Counsel for Louisiana Riverboat Gaming Partnership, Inc., Louisiana River Site Development, Inc., Casino America, Inc., LA Downs, Inc. & CSNO, Inc.
Pettiette, Armand, Dunkelman, Woodley & Byrd, L.L.P. by Robert Dunkelman, Peter J. Rotolo, III, Shreveport, Counsel for Sedgwick, Inc.
John T. Bennett Law Offices, Ltd. by John T. Bennett, Candyce C. Gagnard, Marksville, Counsel for Respondent.
Before BROWN, GASKINS and KOSTELKA, JJ.
GASKINS, Judge.
This case is before us on remand from the Louisiana Supreme Court, which directed this court to reconsider our prior writ denial in light of the recent case of Kelly v. CNA Insurance Company, 98-0454 (La.3/12/99), 729 So.2d 1033. The issue presented is whether an injured employee has a tort cause of action against his employer for refusing to authorize necessary medical treatment when the refusal causes non-fatal harm to the employee or whether he is restricted solely to the remedies available under Louisiana's worker's compensation law. For the reasons set forth below, we grant the writ, make the writ peremptory, and grant summary judgment in favor of the defendants.

FACTS
The plaintiff, Robert Lee Chase, was employed as a chief engineer at the Isle of Capri Casino in Bossier City. While using a pry bar to lift an air conditioning unit in October 1994, he allegedly injured his back, neck, elbow and arm. He subsequently suffered severe neck and back pain, as well as numbness in his left hand. His physician, Dr. Stuart Phillips, diagnosed ulnar tunnel syndrome and performed ulnar nerve transposition surgery on the plaintiff in February 1996. The plaintiffs employer paid for this procedure. Later, the plaintiff began to experience other problems, including the development of a claw hand and the loss of feeling in two fingers. Dr. Phillips recommended additional surgery as soon as possible, as did a consulting physician, Dr. Harold Stokes. However, the employer refused to authorize this surgery because Dr. Stokes was unable to relate the ulnar nerve injury to the on-the-job accident.
The plaintiff filed suit against his employer and its insurer, alleging an intentional tort because of their arbitrary refusal to authorize the second surgery. He further alleged that this intentional and arbitrary refusal to provide necessary medical treatment had caused him significant, immediate and irreversible damage to his health. He further asserted that the defendants were aware that such harm was "substantially certain" to follow from their refusal to pay for the procedure.
The defendants filed an exception of no cause of action and, alternatively, a motion for summary judgment. In the exception of no cause of action, they asserted that the plaintiffs petition failed to state a cause of action because his exclusive remedy was in worker's compensation. Alternatively, they maintained that the petition *117 failed to state a cause of action because there was a legitimate medical dispute as to whether the plaintiff's injuries were work-related.
In their motion for summary judgment, the defendants again contended that the undisputed facts show the existence of a legitimate medical controversy as to whether the ulnar nerve problem was work-related. They denied intentionally and arbitrarily refusing to authorize medical procedures. In support of their motion for summary judgment, the defendants submitted excerpts from the plaintiff's medical records, as well as the depositions of Dr. Phillips and Dr. Stokes. In particular, Dr. Stokes was unable to relate the ulnar nerve problem to the incident with the pry bar because the history given by the plaintiff did not indicate a direct injury to the elbow. An affidavit was also submitted from the adjustor who handled the plaintiff's claim for worker's compensation. He stated that the plaintiffs claim for surgery to re-explore the ulnar nerve was denied on the basis of Dr. Stokes' deposition testimony that the injury was not related to the on-the-job injury.
In opposition, the plaintiff likewise submitted the deposition testimony of the doctors, including a second deposition by Dr. Phillips in which he reiterated his belief that the ulnar nerve injury was work-related, acknowledged his disagreement with Dr. Stokes on that topic, and stated his belief that the plaintiff's fifth finger might have to be amputated due to the delay in performing the second surgery.
The trial court denied the exception of no cause of action, finding that the plaintiff's petition stated a valid cause of action. It also denied the motion for summary judgment on the basis that material facts remained at issue.
The defendants then applied for supervisory writs to this court.[1] We denied the writ on the showing made. The defendants then sought review before the Louisiana Supreme Court, which granted the writ and remanded the case back to this court for "briefing, argument and opinion in light of Kelly v. CNA Ins. Co., 98-0454 (La.3/12/99), 729 So.2d 1033...."

LAW
In Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188, the Louisiana Supreme Court carved out a "narrow exception" to the general rule that an injured employee's exclusive recourse against his employer lay in worker's compensation. In that case, the court held that if an employer intentionally and arbitrarily denied necessary medical expenses when it knew to a substantial certainty that the refusal would result in the employee's death, the employer could be sued in tort. In a footnote, the court specifically reserved "for another day" the decision on whether the exception would apply if the employer arbitrarily refused to pay for necessary medical treatment when it knew that "a significant worsening of the employee's condition" was "substantially certain" to follow the denial.
Different panels of this court have considered the issue with different results. In Berry v. Insurance Company of North America, 28,580 (La.App.2d Cir.10/30/96), 683 So.2d 310, writ denied, 97-0091 (La.3/7/97), 689 So.2d 1374, we declined to extend the Weber exception to a non-death case.[2] However, in Stevens v. Wal-Mart Stores, Inc., 29,124 (La.App.2d Cir.1/24/97), 688 So.2d 668, writ denied, *118 97-0671 (La.5/9/97), 693 So.2d 768, a different panel of this court found the Weber reasoning persuasive and extended it to a non-death case.[3] The court found that the worker's compensation law did not provide an adequate remedy for the plaintiff's injuries.
We addressed the issue again in Kelly v. CNA Insurance Company, 29,455 (La. App.2d Cir.1/23/98), 706 So.2d 198. There the plaintiff alleged that she developed carpal tunnel syndrome and bilateral epicondylitis as a result of her work and that her employer had terminated her disability and medical benefits for no reason. She filed a claim for compensation with the Office of Worker's Compensation (OWC) and was awarded attorney fees and penalties for the employer's arbitrary and capricious conduct which included a failure to make arrangements for the plaintiff to be re-examined by another doctor. While her worker's compensation claim was pending, Ms. Kelly also filed a tort action against her employer for terminating her benefits and for failing to pay her medical expenses. She alleged that the employer's conduct caused her to become clinically depressed and attempt suicide. The suit was dismissed on an exception of no cause of action, and the plaintiff appealed to this court.
The majority of a divided en banc court applied the Weber rationale to hold that a tort cause of action existed in non-fatal cases if the employee alleged the following: (1) he suffered what is not disputed to be a compensable injury; (2) intentional and arbitrary refusal to pay reasonable and necessary medical expenses results in a significant, immediate deterioration of his health; (3) this result would not have occurred otherwise and could not have been averted by recourse to the Worker's Compensation Act; and (4) the employer or insurer knew that such results were substantially certain to follow from the refusal to pay. Finding that Ms. Kelly had not made the appropriate allegations, we remanded the case to the trial court to allow her the opportunity to amend her petition, if possible, to state a cause of action as outlined by our opinion.
The Louisiana Supreme Court granted a writ application in Kelly, supra, to determine whether the plaintiff had a tort cause of action against her employer under the facts alleged.[4] Based upon the facts of the case, the court held that she was limited to the remedies provided under the Louisiana Worker's Compensation Act, La. R.S. 23:1201 et seq. The court compared the facts of the case to those in Weber, supra; it found that the Kelly plaintiffs carpal tunnel injuries were "far from life-threatening" and that the employer's arbitrary denial or delay of treatment would not result in death or a significant worsening of the employee's condition. The court reiterated that the "narrow exception" in Weber resulted from the employer's intentional refusal to pay for medical treatment when it knew that, without such treatment, the claimant's condition was terminal. It also stated that the Weber exception was created, in part, because the worker's compensation procedure in place at that time did not provide for immediate recourse for an employer's refusal to pay medical benefits. The court noted that Ms. Kelly had, in fact, availed herself of the OWC recourse and received not only her benefits but also penalties and attorney fees. The *119 supreme court reinstated the trial court's decision granting the exception of no cause of action and dismissing Ms. Kelly's demands.
Commanded by the Louisiana Supreme Court to reconsider our writ denial in the instant case in light of its opinion in Kelly, we note the lack of a clear pronouncement on this issue.[5] Both Justice Lemmon's concurrence and Justice Calogero's dissent in Kelly point out that the majority opinion fails to squarely answer the very question presented thereindoes the admittedly narrow Weber exception allow an employee to ever state a tort cause of action when his employer's intentional and arbitrary denial of medical benefits caused the employee "to undergo foreseeable disastrous worsening" to a level less than death. The majority opinion suggestswithout explicitly so statingthat perhaps such a cause of action may be available if the worsening is severe or significant enough. However, it found that, under the facts of the case, Ms. Kelly's injuries did not rise to a severe enough level.
Reviewing the instant case in light of Kelly, supra, we find that Mr. Chase's injuries are more akin to those in Kelly than in Weber. Like Ms. Kelly's carpal tunnel syndrome, the plaintiff's elbow and hand injuries are, by their nature, not life-threatening. Furthermore, there is serious dispute as to whether they are even related to the on-the-job accident.
The incident with the pry bar occurred in October 1994. The plaintiff underwent a surgical procedure on his elbow in February 1996 which was, in Dr. Phillips' words, "a disaster." Dr. Phillips, an orthopedic surgeon, felt that another surgery was needed to re-explore his hand, and he related the elbow injury to the pry bar incident. Dr. Stokes, an orthopedic surgeon specializing in hand surgery, recommended that the plaintiff undergo two surgeries. The first would be to move the nerve and restore some sensation. Another surgery would be required to try to overcome the claw deformity. However, given the lack of history of a direct blow to the nerve, Dr. Stokes could not relate the ulnar injury to the pry bar incident. Based upon this statement by Dr. Stokes, the employer refused to pay for the surgery to re-explore the plaintiff's ulnar nerve injury. Given these circumstances, the injury cannot be described as being an indisputably compensable injury.
Another distinguishing factor in the instant case is the plaintiff's apparent failure to pursue a claim under the Louisiana Worker's Compensation Act. To the contrary, he sought to avoid this state's worker's compensation remedies" in favor of the "more alluring remedies" of the federal Jones Act.[6] Thus, it cannot be argued in this caseas in Weberthat the worker's compensation law failed to provide the plaintiff with an adequate remedy.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Smith v. Our Lady of the *120 Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. After a careful review of the record before us, we conclude that the defendants are entitled to summary judgment.[7] The exacerbation of the plaintiff's injuries, while serious, are "far from life-threatening." Thus, according to the supreme court's rulings in the Weber and Kelly cases, the plaintiff may not pursue a tort suit against his employer and is restricted to his remedies under the Louisiana Worker's Compensation Act.

CONCLUSION
The writ is granted and made peremptory. We reverse the trial court judgment and grant summary judgment in favor of the defendants/applicants. Costs are assessed against the plaintiff/respondent.
WRIT GRANTED AND MADE PEREMPTORY; SUMMARY JUDGMENT GRANTED IN FAVOR OF DEFENDANTS/APPLICANTS.
NOTES
[1] In their writ application, the defendants focused on the trial court's denial of their motion for summary judgment. As to their exception of no cause of action, they conceded that the Second Circuit had just rendered its en banc opinion in the Kelly case, discussed infra, but asserted that it was incorrect.
[2] The plaintiff in the Berry case suffered from reflex sympathetic dystrophy and claimed that his employer failed to pay for medical treatment which would have prevented his condition from spreading and becoming intractable and would have allowed him to regain use of his right leg.
[3] There the plaintiff claimed deterioration of his physical and mental condition, including the possibility of suicide, as the result of the employer's failure to pay for treatment for severe intractable pain from a shoulder injury.
[4] The writ grant was presumably precipitated by the split among the courts of appeal over the issue of whether to apply the Weber exception to non-death cases. While the Second Circuit approved expanding it to include non-death cases in Stevens and Kelly, the Third and Fifth Circuits both refused to extend Weber. See Stotts v. City of Lafayette, 97-1251 (La.App. 3d Cir.3/6/98), 708 So.2d 820, and Payne v. Tonti Realty Corporation, 98-76 (La. App. 5th Cir. 6/30/98), 714 So.2d 1271, writ denied, 98-2037 (La.5/7/99), 741 So.2d 26.
[5] The supreme court's ruling in Kelly, supra, has been interpreted by one federal district court as tacitly approving tort suits against employers in non-fatal injury cases. See Livaccari v. Alden Engineering, Inc., 1999 WL 287307 (E.D.La.1999). Yet in a case rendered after the supreme court's Kelly opinion, the Third Circuit continued in its view that the Weber exception does not apply in non-death cases. See Foster v. F.A. Richard & Associates, Inc., 98-1621 (La.App. 3d Cir.4/7/99), 732 So.2d 714, writ denied, 99-1357 (La.6/25/99), 746 So.2d 605.
[6] The plaintiff filed suit against his employer seeking recovery as a seaman under the Jones Act; however, we found that the riverboat was not a "vessel" for purposes of the Jones Act or general maritime law. See Chase v. Louisiana Riverboat Gaming Partnership, 30,368 (La.App.2d Cir.2/25/98), 709 So.2d 904, writ denied, 98-0869 (La.6/26/98), 719 So.2d 1057.
[7] Inasmuch as we are able to resolve the case on the motion for summary judgment, we pretermit consideration of the exception of no cause of action.