764 So.2d 245 (2000)
Christina HODGES, Plaintiff-Respondent,
v.
BOSSIER MEDICAL CENTER HEALTHCARE FOUNDATION, et al., Defendants-Applicants.
Nos. 33,461-CW, 33,472-CW.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*246 Cook, Yancey, King & Galloway by S. Price Barker, G. Brian Baker, Shreveport, Counsel for Applicant Bossier Medical Center.
The Juneau Firm by Thomas R. Juneau, Michael A. Juneau, Karen B. Levy, Lafayette, Counsel for Applicant F.A. Richard & Associates, Inc.
Jack M. Bailey, Jr., J. Allen Cooper, Jr., J. Chris Miciotto, Shreveport, Counsel For Respondent.
Before GASKINS, CARAWAY and PEATROSS, JJ.
GASKINS, J.
These consolidated writ applications question whether an employee with a work-related injury may sue her employer and its administrator of workers' compensation claims in tort when their delay in approving surgery allegedly caused a significant worsening of the employee's medical condition. For the reasons assigned below, we reverse the judgments of the trial court and grant the defendants' exceptions of no cause of action. Accordingly, the defendants' writ applications are granted and made peremptory.

FACTS
Christina Hodges, the plaintiff, was a nurse at Bossier Medical Center ("BMC"). According to the facts pled in her petition, in June 1997 she injured her back in a work-related accident. Her treating doctor prescribed a thoracotomy to relieve the compression to her spinal column. On April 14, 1998, she was referred to two other doctors, who concurred in the treating doctor's diagnosis and recommended surgery.
The plaintiff's employer and its administrator of workers' compensation claims requested another medical opinion, sending her to see another doctor on April 30, 1998. This physician likewise concurred with the other three doctors that surgery was necessary. However, the surgery was not approved by the employer or its claims administrator.
On June 10, 1998, the plaintiff underwent surgery, which was approved by her private medical insurer. During the procedure, it was discovered that her spine had collapsed, allegedly during the 56-day period between when her doctor recommended the procedure and the actual surgery.
In June 1999, the plaintiff brought the instant tort suit against her employer, Bossier Medical Center Healthcare Foundation, and the administrator of its workers' compensation claims, F.A. Richard and Associates, Inc., ("FARA"). She contended that her spine collapsed due to their failure to authorize necessary medical treatment when they knew that: (1) timely surgery was critical and (2) her condition was worsening to the point where her spine could collapse. She claimed that the defendants conspired to commit an intentional and willful act, i.e., the denial or delay of necessary medical treatment. She alleged that as a result of their deliberate and premeditated conduct, she sustained a collapsed spine which has caused her to suffer severe numbness, clumsiness, and excruciating pain and which has deprived her of the "use of her back and legs." She contends that she will never be able to return to the work force.
In her petition, the plaintiff further asserted that the Louisiana Workers' Compensation Act, La. R.S. 23:1201 et seq., does not shield the employer for its deliberate *247 actions and that it provides no protection to a third-party company like FARA.
On July 1, 1999, BMC filed an exception of no cause of action, asserting that under Kelly v. CNA Insurance Company, 98-0454 (La.3/12/99), 729 So.2d 1033, it was immune from tort actions and the plaintiff's sole remedy was in workers' compensation.
On August 2, 1999, the trial court denied BMC's exception in a written opinion.[1] In so ruling, the court noted that the Kelly case failed to resolve the question of whether the rationale of Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188, could be expanded to non-death cases when the employer's intentional refusal to pay for necessary medical services is substantially certain to result in a significant worsening of the claimant's condition. The trial court then distinguished Kelly, supra, on the basis that the denied treatment in that case caused pain and suffering but did not cause the condition to worsen. The trial court also found that the plaintiff stated a cause of action under Stevens v. Wal-Mart Stores, Inc., 29,124 (La.App.2d Cir.1/24/97), 688 So.2d 668, writ denied, 97-0671 (La.5/9/97), 693 So.2d 768, which it found was the more factually compatible and the most recent decision by the Second Circuit. However, the trial court admitted that the allegations did not state a cause of action under Berry v. Insurance Company of North America, 28,580 (La. App.2d Cir.10/30/96), 683 So.2d 310, writ denied, 97-0091 (La.3/7/97), 689 So.2d 1374, which refused to extend Weber to non-death cases.
On August 3, 1999, FARA filed an exception of no cause of action which mirrored that of BMC. On that same day, the trial court signed a judgment denying FARA's exception for the reasons set forth in its prior written opinion addressing BMC's exception.
BMC filed a writ application (No. 33,122-CW) in this court, as did FARA (No. 33,209-CW). However, these applications were denied without prejudice on October 14, 1999, for URCA noncompliance. Subsequently, FARA filed another writ application (No. 33,461-CW), as did BMC (No. 33,472-CW). On January 13, 2000, these writ applications were consolidated, granted and docketed.

EXCEPTION OF NO CAUSE OF ACTION
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Louisiana Paddle-wheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885. The exception is tried on the face of the pleadings and the court accepts the facts alleged in the petition as true, determining whether the law affords relief to the plaintiff if those facts are proved at trial. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993). In reviewing a trial court's ruling sustaining an exception of no cause of action, the appellate court should subject the case to de novo review because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition. Kelly, supra.
In Weber, supra, the supreme court fashioned a remedy in the tragic case of an employee who, it was alleged, died after his employer intentionally denied him medical treatment necessary to save his life. Following the employee's death, his family filed a wrongful death action against the employer. The supreme court allowed the family to proceed with this cause of action because the Louisiana Workers' Compensation Act provided them no recourse. To that end, the court essentially found that there were two separate incidents of injury, the initial one being the work-related injury and the other one being the subsequent refusal of *248 medical treatment. The court concluded that the legislature did not intend that the act's exclusive remedy of penalties and attorney fees for an employer's intentional and arbitrary refusal to provide medical treatment to a compensation victim would encompass the situation where the employer knew to a substantial certainty that the refusal would cause death which would not otherwise occur. However, the court specified that this was "a narrow exception" to the general rule that penalties and attorney fees are the exclusive remedy for the employer's misconduct in handling the administration of compensation claims. It specifically reserved for another day the issue of whether the exception would apply in the case of a significant worsening of the employee's condition as opposed to death.
The appellate courts were soon presented with cases that attempted to expand the narrow Weber rationale to non-death cases. The Third Circuit found that Weber was "very limited" and refused to extend it in Stotts v. City of Lafayette, 97-1251 (La.App. 3d Cir.3/6/98), 708 So.2d 820, and in Foster v. F.A. Richard & Associates, Inc., 98-1621 (La.App. 3d Cir.4/7/99), 732 So.2d 714, writ denied, 99-1357 (La.6/25/99), 746 So.2d 605. In Stotts, the court stated that, to rule otherwise, would "open the floodgates" to tort suits for an employer's arbitrary and capricious failure to pay compensation benefits and medical benefits and effectively eliminate the penalties and attorney fees sections of the Louisiana Workers' Compensation Act.[2] The Fifth Circuit also declined to apply Weber to a non-death case in Payne v. Tonti Realty Corporation, 98-76 (La.App. 5th Cir. 6/30/98), 714 So.2d 1271, writ denied, 98-2037 (La.5/7/99), 741 So.2d 26.
The Second Circuit has considered the issue in several cases. In Berry v. Insurance Company of North America, supra, we declined to extend the Weber exception to a non-death case. The plaintiff in that case suffered from reflex sympathetic dystrophy and claimed that his employer failed to pay for medical treatment which would have prevented his condition from spreading and becoming intractable and would have allowed him to regain use of his right leg. Yet, in Stevens v. Wal-Mart Stores, Inc., supra, a different panel of this court declined to follow Berry, instead applying the Weber reasoning to a non-death case. There the plaintiff claimed deterioration of his physical and mental condition, including the possibility of suicide, as the result of the employer's failure to pay for treatment for severe intractable pain from a shoulder injury. The court found that the workers' compensation law did not provide sufficient redress for the plaintiff's injuries.
In Kelly v. CNA Insurance Company, 29,455 (La.App.2d Cir.1/23/98), 706 So.2d 198, the plaintiff alleged that she developed carpal tunnel syndrome and bilateral epicondylitis as a result of her work and that her employer had terminated her disability and medical benefits for no reason. She filed a claim for compensation with the Office of Workers' Compensation (OWC) and was awarded attorney fees and penalties for the employer's arbitrary and capricious conduct which included a failure to make arrangements for the plaintiff to be re-examined by another doctor. While her workers' compensation claim was pending, Ms. Kelly also filed a tort action against her employer for terminating her benefits and for failing to pay her medical expenses. She alleged that the employer's conduct caused her to become clinically depressed and attempt suicide. The suit was dismissed on an exception of no cause of action, and the plaintiff appealed to this court. The majority of a deeply divided en banc court applied the Weber rationale to hold that a tort cause of action existed in *249 non-fatal cases if the employee alleged the following: (1) he suffered what is not disputed to be a compensable injury; (2) intentional and arbitrary refusal to pay reasonable and necessary medical expenses results in a significant, immediate deterioration of his health; (3) this result would not have occurred otherwise and could not have been averted by recourse to the Workers' Compensation Act; and (4) the employer or insurer knew that such results were substantially certain to follow from the refusal to pay. Finding that Ms. Kelly had not made the appropriate allegations, we remanded the case to the trial court to allow her the opportunity to amend her petition, if possible, to state a cause of action as outlined by our opinion.
However, the Louisiana Supreme Court granted the Kelly defendants' writ application and held that the plaintiff was limited to the remedies provided under the Louisiana Workers' Compensation Act. Comparing the facts of the case to those in Weber, supra, it found that the Kelly plaintiff's carpal tunnel injuries were "far from life-threatening" and that the employer's arbitrary denial or delay of treatment would not result in death or a significant worsening of the employee's condition. The court reiterated that the "narrow exception" in Weber resulted from the employer's intentional refusal to pay for medical treatment when it knew that, without such treatment, the claimant's condition was terminal. It also stated that the Weber exception was created, in part, because the decedent died before he could seek judicial intervention for the refusal to pay for medical treatment. It found that OWC's current procedures adequately provided for immediate recourse for an employer's refusal to pay medical benefits. The court noted that Ms. Kelly had, in fact, availed herself of the OWC recourse and received not only her benefits but also penalties and attorney fees. The supreme court reversed the decision of the Second Circuit and reinstated the trial court's decision granting the exception of no cause of action and dismissing Ms. Kelly's demands.
Most recently, we considered the issue in Chase v. Louisiana Riverboat Gaming Partnership, 31,610 (La.App.2d Cir.9/22/99), 747 So.2d 115. The plaintiff, who allegedly injured his back, neck, elbow and arm in a work-related accident, filed suit against his employer and its insurer, alleging an intentional tort because of their arbitrary refusal to authorize a second surgery for his ulnar nerve injury. The trial court denied the defendants' exception of no cause of action, finding that the plaintiff's petition stated a valid cause of action. It also denied the defendants' motion for summary judgment on the basis that material facts remained at issue. We denied the defendants' writ application on the showing made. The defendants then sought review before the Louisiana Supreme Court, which granted the writ and remanded the case back to us for reconsideration in light of the supreme court's decision in the Kelly case. We found that the plaintiff's injuries, like those in Kelly, were not life-threatening. Also, there was substantial dispute as to whether the complained of injuries were related to the on-the-job accident. Furthermore, the plaintiffs active avoidance of any claim under the Louisiana Workers' Compensation Act tended to negate his argument that the act had failed to provide him with an adequate remedy. Accordingly, we found that the plaintiff was restricted to his remedies under workers' compensation law.
In the instant case, we concludeas we did in Chasethat the plaintiff is restricted to the remedies provided to her in the Louisiana Workers' Compensation Act. Her injuries, while unquestionably serious, are more akin to those in Kelly than Weber and are "far from life-threatening." Here, as in Chase, the plaintiff made no attempt to resort to the remedies provided in the act, instead obtaining the surgery *250 through her personal insurer and then filing her tort suit in district court.[3]
The plaintiff zealously argues that the remedies provided under workers' compensation law for a person in her position are imperfect to the point of being ineffectual. Unfortunately, this contention more properly addresses itself to the legislature for rectification than to the courts.
The plaintiff cites the recent Louisiana Supreme Court case of O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.3/17/00), 758 So.2d 124, as supporting her argument that she is entitled to bring a tort suit against her employer. We disagree, finding that case to be clearly distinguishable from the situation presented in the instant case. In O'Regan, supra, the employee's disease was presumed to be non-occupational under the Louisiana Workers' Compensation Act and thus her claim was not covered under its provisions. Since the act itself presumed that her claim was not covered, its exclusivity provision was not applicable to the employee and she could sue her employer in tort. In so deciding, the supreme court noted that the act "was designed to serve as a substitute for an employee's right to sue in tort and to provide no-fault recovery. It was not intended to create a class of employees who had neither a right to recovery under the Act nor a right to a claim in tort."
Furthermore, as to FARA, the administrator of BMC's workers' compensation claims, we look to our recent decision in Hale v. F.A. Richard & Associates, Inc., 32,907 (La.App.2d Cir.4/5/00), 756 So.2d 1261, in which we held that there is no action in tort against a third-party administrator such as FARA for refusal to pay for medical treatment. See also Foster v. F.A. Richard & Associates, Inc., supra.
Based on the above, we find that the trial court erred in denying the defendants' exceptions of no cause of action. The plaintiff has no tort action under the facts of this case. Accordingly, we reverse.

CONCLUSION
The trial court judgments denying the defendants' exceptions of no cause of action are reversed. The writs are granted and made peremptory. Costs are assessed against the plaintiff.
REVERSED.
NOTES
[1] Judgment in conformity with this opinion was signed November 8, 1999.
[2] In Broussard v. F.A. Richard & Associates, Inc., 99-10 (La.App. 3d Cir.5/5/99), 740 So.2d 156, the Third Circuit again refused to expand Weber, this time in a case in which an employee committed suicide allegedly due to the employer's refusal to pay for back surgery.
[3] Apparently, at some point after her surgery, it is asserted in brief that the plaintiff filed a claim with the OWC.